[NOTE. See Case No. 7,822.]

## Case No. 7,822.

### KINGSTON v. KINCAID et al.

[1 Wash. C. C. 454.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1806

PRINCIPAL AND AGENT—RIGHT TO COMMUTE A
DEBT—DISCRETION OF AGENT.

1. An attorney, authorized to collect a debt for his principal, cannot commute that debt for one due by himself to the debtor, by the mere

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States under the supervision of Richard Peters, Jr., Esq.]

operation of exchanging one for the other. The debtor cannot say he has paid his debt to the attorney, by showing an agreement made by the attorney to credit the debtor, and debit himself, with the amount which he, the attorney, owes.

[Cited in Randolph v. Ringgold, 10 Ark. 279; Williams v. Johnston, 92 N. C. 532.]

2. An agent, if a discretion is given to him, is bound to act, to the best of his judgment, for the benefit of his employer. If his orders be positive, he must either refuse to act, or he is bound to a strict observance of them. He cannot exercise his own judgment, but as to the best mode of executing the orders according to their terms. If the orders are ambiguous, the construction must be taken most strongly against him who gave them.

[Cited in Buell v. Chapin, 99 Mass. 596.]

3. The defendant sent a parcel of sugars to the plaintiff, without orders to do so, which sold at a loss. When the plaintiff received notice of the shipment, he expressed his regret that it had been made; but he neither expressly accepted, nor refused it. In four days after, he refused taking it on his own account; and he notified the defendant that he would sell the sugars on his, the defendant's, account. Held, that the plaintiff had a right to deliberate for a few days; and was not bound to receive the shipment on his own account, because he did not reject it in the first instance.

[Cited in Pickett v. Pearsons, 17 Vt. 476.]

The award in this case, having been set aside last term [Case No. 7,821], the cause came on now, to be tried on the general issue. The following short statement, will be sufficient to explain the principal points, which arose in the cause; the particular facts on which these points rested, will be noticed in the charge. The plaintiff, Stephen Kingston, a merchant of Philadelphia, in July, 1799, sent two of his vessels, the Spy, and the Eliza, to Barbadoes, with cargoes, under the management of his brother Henry, the supercargo; who was invested with certain powers, as to the destination of both of them, after the sale of their cargoes. Henry Kingston, after getting to Barbadoes, not being permitted to land his cargoes, which consisted of provisions, went to Martinique, and not selling there, sent the Eliza to the defendants at Jamaica, to whom he wrote several letters, containing orders, respecting the voyage, upon which she was to be sent, from thence. The first and great question was, whether the defendants, by sending her to New-York, with a cargo on freight, consigned to other persons than the plaintiff, committed a breach of the orders given to them. The plaintiff, after the above transaction had terminated, gave a power of attorney to George Kinghorn of Jamaica, to collect from the defendants, a balance which he claimed of them, with full powers to compromise and compound, as to him might seem right. Wishing, afterwards, to have his dispute with the defendants arbitrated, and that the said George Kinghorn, should act as an arbitrator on his part, he wrote to him, requesting him to substitute Henry Kingston, as his, the plaintiff's, attorney, in order that he, Kinghorn, might be free from all objection. This was accordingly done. On the 19th, 20th, or 21st of September, 1801,

it appears by a bill of parcels, made out by defendants, against Henry Kingston, that they sold to him provisions, to the amount of £931. 5s. 3d., and on the 23d of the same month, the defendants gave Henry Kingston a receipt for that sum, as so much paid for the above goods; and on the same day, Henry Kingston gave the defendants a receipt for £931. 5s. 3d. received by him, on account of the plaintiff. The second question was, whether this sum was a proper charge against the plaintiff. When the Eliza returned to New-York, she brought in a parcel of sugar, on account of the plaintiff, which was sold at a considerable loss, and the third question was, whether this loss should be fixed on the plaintiff, or should be borne by the defendants. On the part of the former, it was argued, that the shipment was unauthorized. On that of the latter, that when the plaintiff had notice of it, he merely expressed his regret that it was made, but did not object to it, until four days afterwards, when he wrote to the defendants, that he should sue them, for their account. The cause was argued by Mr. Ingersoll for plaintiff, and Rawle and Gibson for defendants.

WASHINGTON, Circuit Justice (charging jury). To rid the case of the second question at once, it is only necessary to observe, that all the powers communicated to Kinghorn, by the letter of attorney, were transferred to Henry Kingston, by the substitution. That Kinghorn had an authority to take goods from the defendants, in discharge of their debt to the plaintiff; and consequently, Henry Kingston had the same authority. But an attorney authorized to receive a debt, due to his principal, cannot commute that debt, for one due from himself to the debtor, by the mere operation of exchanging one for the other. The debtor cannot say, that he has paid his debt to the attorney, by showing an agreement of the attorney, to credit the debtor, and debit himself with the amount of what he himself owes. From the bill of parcels, it would appear, that these provisions were sold to Henry Kingston, on the 19th, 20th, or 21st September, in his individual capacity. But two days afterwards, the parties seem to have agreed to settle that claim, which the defendants had against the attorney, by charging it to the plaintiff. If these transactions were separate, then, according to the above principles, the claim is inadmissible. But, if, in truth, the whole formed but one transaction, and it was originally agreed, that the sale was on account of the plaintiff, then he is bound by it. This fact would be completely established, by Porter's deposition, if he had fixed the precise day, when such agreement was made, and it appeared to have been at the time the sale was made, or before. But, as he speaks of it, as having been made in September generally, and it appears, from the two receipts, that such an agreement was made on the 23d of

September, two days after the sale; I shall leave it to the jury to say, whether they are satisfied, that the agreement was made before, or at the time of sale.

The first, is the important question; and in the outset, I lay down the following principles. An agent, if a discretion be given him, is bound to act to the best of his judgment, for the benefit of his employer. If the orders he receives be positive, he must either refuse to act, or he is bound to a strict observance of them. He is not to exercise his own judgment, but as to the best mode of executing the orders, according to the terms of them. On the other hand, if the orders be ambiguously expressed, the construction must be taken most strongly against him, who has been guilty of the ambiguity. It is plain in this case, that at the time Henry Kingston left America, charged with these vessels, the plaintiff had no definite object, as to their ulterior destination. He says in his instructions, an extract from which was enclosed by Henry Kingston, to the defendants, on the 10th October, 1799, as will be hereafter mentioned; that if Henry Kingston should not be able to fill both ships, he was to determine to take a good freight for the Eliza, and her cargo consigned to the plaintiff, if sent to Philadelphia; or to ship a few hogsheads of sugar and some rum, and send her to Honduras, to load with logwood and mahogany, and thence to Philadelphia; or if late in the season, to Norfolk. After which, he gives a sketch of the funds to be employed in purchasing these articles, and the probable price of them. He also speaks, in the same letter of instructions, of the vessels proceeding from Honduras to Liverpool. The power of deciding upon these different voyages, is vested in Henry Kingston, and was communicated to the defendants.

After Henry Kingston left America, we lose sight of the plaintiff, who never again appears upon the stage, until the defendants had adopted the course which is complained of, and after it was too late for him to prevent it. Henry Kingston was then the effective man; and all our attention must be drawn to the letters, written by him, to the defendants. On the 3d September, 1799, he writes to defendants, that he shall probably send the Eliza to Honduras, and that possibly she may call at Jamaica, and their aid may be asked. On the 27th, Henry Kingston writes to defendants, that he shall send her to them in a few days, and that from Kingston, they are to despatch her to Honduras. On the 9th October, he actually sends her, and desires them, out of certain bills, which he encloses, to reserve enough to complete her loading at Honduras, and desires them to lose no time in despatching her; and to give them a conception of his brother's idea of the bay voyage, he says, he encloses them an extract from his brother's instructions of the 20th July, in which he says, that "if the Eliza and the other vessel should not be filled,

he, Henry Kingston, is to determine to take a good freight for the Eliza if offered, the cargo to be consigned to the plaintiff, if she returns to Philadelphia; or to ship a few hogsheads of sugar and rum, and send her to Honduras, to load with logwood and mahogany, for Philadelphia, or if late in the season, for Norfolk, or to Liverpool. Forgetting to enclose the extract, Henry Kingston, on the next day, writes another letter to the defendants in which it is enclosed. In this letter he gives further directions about the voyage to Honduras, and then adds, "though I can think of no other eligible voyage, should you be able to procure a good freight for the Eliza, direct back to Philadelphia, particularly, if you can influence the consignment to my brother, I doubt not, he would prefer it."

If it had not been for this latter sentence, there could not exist a doubt, but that the defendants had no alternative, but were bound to send her to Honduras. The letters of the 27th September, 9th October, and the first part of this letter, tied up their hands, as to this single voyage. The latter part, untied them, it is true, but to what extent? The vessel was to be sent to Honduras, or on freight to Philadelphia; yet the defendants did neither. How do they excuse themselves? They say: that the vessel and captain were unfit for the bay voyage; that the demand for dye woods was great, and that they had fallen in price; that they did not send her to Philadelphia, because she was too late in the season. Answer: The defendants had no choice, but to embrace one of the alternatives. The only scope for the exercise of their judgment, was, whether the bay voyage, or that to Philadelphia, was to be preferred? It was for them to weigh the advantages and disadvantages of both, and then to choose the most eligible. If it was too late to come to Philadelphia, it was a conclusive reason for sending her to Honduras. If a man is bound to do one of two things, and one is rendered impossible by the act of God, he must do the other. He cannot excuse himself by doing a third thing, which he is not authorized to do. He had no right to depart from his orders, from an opinion, however well founded, that the bay voyage would not answer. Of this, the plaintiff was entitled to be the judge.

2d. It is said, that the defendants, being referred to the extract of the plaintiff's instructions enclosed in the letter of the 10th of October, were at liberty to govern themselves by that extract. To this, there are conclusive answers. The first is, that they are expressly referred to that extract, not to give a view of the plaintiff's general plans for the destination of this vessel, (which, had that been the case, would have been an important part of the defendants' defence,) but, to give the plaintiff's ideas of the bay voyage; and, consequently, the reference goes to strengthen the argument, that this was

the great and primary voyage intended, and the return voyage to the United States only secondary. The second answer is, that the defendants themselves, did not understand the plaintiff's, or H. Kingston's views. For, in their letter of the 26th October, to the plaintiff, speaking of H. Kingston's letter of the 10th, and the extract enclosed, they say, that they understand the plaintiff's wishes to be, that they are to send the vessel to Honduras, provided a freight back, consigned to the plaintiff, cannot be obtained. Yet, they neither send her to Honduras, to Philadelphia, nor did she come consigned to the plaintiff. You are the proper judges of the amount of damages sustained by the plaintiff, if any were sustained, by this breach of orders.

As to the third point, respecting the loss on the sugars, it is too plain to be argued. It is not necessary for the plaintiff to show, that defendants were not forbidden to ship them on his account; the defendants must prove, that they were ordered. This is not pretended. But, it was argued, that the plaintiff did not object to the shipment, in the first instance. Answer: he was not obliged to do so. He had a right to deliberate; and, though his first letter seems like a tacit acquiescence, yet, in four days after, he expressly refused to receive them on his own account; and it is probable, that both letters were received, at or about the same time. The plaintiff has a strong reason for contending, that his apparent acquiescence in his first letter, should not bind him, viz. that, having committed the management and destination of his vessels to H. Kingston, then in the West Indies, he could not at first tell how far he might have sanctioned this shipment. But, within four days, having heard from him, or, without doing so, he determined, at all events, to refuse. The loss, therefore, must be borne by defendants.

Verdict for plaintiff.