GEORGE B. UPTON *vs.* THE SUFFOLK COUNTY MILLS

A general selling agent has no implied authority to bind his principals by a war-
ranty, that flour sold by him on their account will keep sweet during a sea voyage,
in the absence of any usage of business to that effect.

ASSUMPSIT for breach of a warranty that certain flour should keep sweet during a voyage to California. The defendants, a corporation established for the manufacture and sale of flour, among other grounds of defence, not necessary to report, denied that they undertook and warranted as set forth in the declaration. At the trial in this court, before *Bigelow,* J. it appeared that the plaintiff, being a merchant engaged in the California trade, on the 19th of January, 1850, obtained from the agent of the defendants the following memorandum of agreement in writing, namely: " I am to furnish Mr. Upton 4000 qrs. bbls. of flour, in good tight packages, on or before the 18th February next. The flour to be of such a character as will ensure its keeping sound on a voyage to San Francisco. For S. C. Mills, W. W. Allcott. January 19th, 1850."

On the 18th of February, 1850, the flour having been made at the defendants' mills, and delivered to the plaintiff for shipment, the said Allcott made out and delivered to the plaintiff the following bill of parcels, receipt, and memorandum of warranty : " Boston, Feb. 18th, 1850. Mr. George B. Upton, Bo't of W. W. Allcott, [flour described]. Rec'd pay't, Feb. 18th, 1850, by notes payable in 6 months. William W. Allcott. The above flour is warranted to keep sweet during voyage to California. Witness, Geo. B. Upton, Jr."

The warranty, receipt, and signature, on the above bill of parcels, were in the handwriting of said Allcott. The residue of the bill of parcels was written by a clerk. The plaintiff also offered evidence tending to show the injury to the flour on the voyage to California, but the evidence upon this point became immaterial in the final decision of the cause.

For the defendants, said W. W. Allcott, among other things, testified as follows: " In January, 1850, I held the office of superintendent and general agent for the Suffolk County Mills (the defendants). My duties were confined to manufacturing and selling on commission. I have been a director for some time. I had no special instructions in regard to making sales. No authority was ever given me by the company to enter into such a warranty as in the bill of

parcels. I never represented to Mr. Upton that I did not have such authority. I never mentioned to the directors that I had given such a warranty until the claim was made by Mr. Upton. I return the proceeds of sales from day to day to the treasurer. My agency in selling is limited to selling and paying over the proceeds. I think no extra price was paid for the warranty. I never stated to Mr. Upton that this was my contract, and not that of the company. I made this sale for a commission, on account of the Suffolk County Mills, and as their property. I entered the sales. as agent of the company, in books belonging to the company, but not the warranty." Upon this, and much other evidence in the case, which finally became immaterial, the case was taken from the jury under an agreement of the parties, that if the court should find upon the evidence that the contract of warranty was not originally binding upon the defendants, or had not been ratified by them, the plaintiff was to become nonsuit; otherwise the case was to be referred to assessors.

*G. T. Curtis & C. P. Curtis, Jr.* for the plaintiff.

*C. G. Loring & J. W. Thornton,* for the defendants.

METCALF, J. The court have not found it necessary to form an opinion upon a question which was ably argued, namely, whether the contract declared on legally purports to be a contract between the plaintiff and the defendants. Assuming that it does, yet we are all of opinion that the defendants are not bound by it, because Allcott had no authority to bind them by such a contract. It appears from his testimony that he was their general selling agent, and had no special instructions in regard to making sales; that no authority (by which he doubtless means express authority) was ever given to him by the defendants to make such a warranty as that on which this action is brought; that no extra price was paid for the flour by reason of the warranty; that though the sale was entered on the defendants' books, yet that the warranty was not entered there; and that the defendants had no notice of the warranty until they were called upon by the plaintiff to answer for a breach of it.

The single question which we have examined is, what is

the extent of the implied authority of a general selling agent? The answer is, it is the same as that of other general agents. And it is an elementary principle that an agent, employed generally to do any act, is authorized to do it only in the usual way of business. Smith's Merc. Law (Amer. ed. 1847), 105, (5th ed.) 129; Woolrych on Com. & Merc. Law, 319; *Jones* v. *Warner*, 11 Conn. 48. A general agent is not, by virtue of his commission, permitted to depart from the usual manner of effecting what he is employed to effect. 3 Chit. Law of Com. & Man. 199. When one authorizes another to sell goods, he is presumed to authorize him to sell in the usual manner, and only in the usual manner, in which goods or things of that sort are sold. Story on Agency, § 60. See also *Shaw* v. *Stone*, 1 Cush. 228. The usage of the business in which a general agent is employed furnishes the rule by which his authority is measured. Hence, a general selling agent has authority to sell on credit, and to warrant the soundness of the article sold, when such is the usage. *Goodenow* v. *Tyler*, 7 Mass. 36; *Alexander* v. *Gibson*, 2 Campb. 555; *Nelson* v. *Cowing*, 6 Hill, 336; 2 Kent Com. (6th ed.) 622; Russell on Factors, 58; Smith on Master & Servant, 128, 129. But as stocks and goods sent to auction are not usually sold on credit, a stock broker or auctioneer has no authority so to sell them, unless he has the owner's express direction or consent. *Wiltshire* v. *Sims*, 1 Campb. 258; 3 Chit. Law of Com. & Man. 205; 1 Bell Com. 388. And it was said by Mr. Justice Thompson, (9 Wheat. 647,) that auctioneers have only authority to sell, and not to warrant, unless specially instructed so to do.

As there is no evidence nor suggestion of a usage to sell flour with the hazardous warranty that it shall keep sweet during a sea voyage, in which it must twice cross the equator, we deem it quite clear that nothing short of an express authority, conferred on Allcott by the defendants, would empower him to bind them by such a warranty. See *Cox* v. *Midland Counties Railway Company*, 3 Welsb. Hurlst. & Gord. 278.

*Plaintiff nonsuit*