JAS. L. WILLIAMS AND WIFE v. JOHN W. JOHNSTON et als.

## *Agent.*

1. Authority delegated by a creditor to an agent to collect and settle a debt, leaves the medium of payment largely at the agent's discretion, but it does not extend to a settlement which the debtor knows will enure entirely to the benefit of the agent.

2. So, where the debtor contracted with an agent who was authorized to collect a debt, that he would deliver timber at the agent's mill, for the agent's individual use, which was to be applied in payment of the debt; *Held*, that the delivery of the timber under this contract does not discharge the debt due the principal.

CIVIL ACTION tried before *Gudger, Judge,* and a jury at Fall Term, 1884, of HALIFAX Superior Court.

There was verdict and judgment for the defendant, and the plaintiff appealed.

*Mr. R. O. Burton, Jr.,* for the plaintiffs.
*Messrs. Mullen & Moore, Day & Zollicoffer* and *Walter Clark,* for the defendants.

SMITH, C. J.   William W. Brickell, as guardian of the *feme* plaintiff, sued and recovered judgment against John W. Johnston, administrator of William L. Johnston, a prior guardian, at May Term, 1866, of the County Court of Halifax, for the sum of $4,485 $\frac{19}{100}$ due the ward, with interest thereon from the first day of January preceding.   A portion of the amount was collected, but the estate of the debtor was insufficient to pay all, and on October 24th, 1873, there remained unpaid of principal money $908 $\frac{6}{100}$ and $196 $\frac{40}{100}$ in costs incurred.   Alfred W. Simmons, a surety on the bond of the first guardian, died in 1867 possessed of real and personal estate, and leaving a will wherein he appoints the defendant John W. Johnston, executor and devises to the *feme* defendant Susan F. Johnston, the several tracts of land described in the plaintiff's complaint, and

these, the small personalty that passed into the executor's hands being exhausted, constitute the only property of the testator out of which the indebtedness can be satisfied. The present suit is to enforce payment by a sale of the lands, or so much of them, as shall be necessary to discharge the judgment.

The defence set up is that the demand has been paid, and the only issue presented to the jury is whether the debt of $1,104$\frac{46}{100}$, or any portion and what portion of it, has been paid. The response is that the judgment has been paid and satisfied.

A small sum, $150, it was admitted, had been so received and applied by the plaintiff James L. Williams, acting for and on behalf of his wife.

The testimony of John W. Johnston, examined on his own behalf, was, in substance, that the male plaintiff, in 1876, bought a saw-mill and put it on witness's land, with his consent, to be there operated and run for the said plaintiff; that at the same time it was agreed between them that the plaintiff might cut trees on the land for the use of the mill, paying twenty-five cents for each, and that the money due therefor should be in settlement of the judgment.

The plaintiff James L. Williams testified for himself that he purchased and sawed up the trees and was to pay the stipulated price, but "did not bargain that the timber at 25 cents should go on this debt."

It was in evidence that James L. Williams who had received payments on the judgment, rents out his wife's real estate, which is considerable, attends to all her out-door business, and has erected and removed buildings upon her land, she being not competent, physically, to attend to her own affairs.

The plaintiff also stated that he had control of his wife's land, and the management of her business matters, and that since the transaction with the defendant, the agency had been constituted in a writing, which had been spread upon the registry, but he had, since as before, exercised the same general authority.

The other evidence relates to the number of trees cut down and used, and we put it out of view as unimportant in considering the matter brought up on the appeal.

The plaintiff requested the Court to charge the jury:

1. That a general authority to collect a debt does not authorize a settlement of it in timber trees.

2. "That there was no evidence before them to warrant them in finding that James L. Williams was authorized to settle the judgment in trees, or a gin-house."

The court declined to give these instructions, and instead gave the following:

"That they should first determine whether the plaintiff Williams was the general agent of his wife for the transaction of her business. If they should so find, they should then proceed to determine whether said Williams had made a contract with Johnston to take pay in timber trees; and if they should so find and also that such payment in trees had been made to him, then it would be binding, and they should find the first issue "Yes.""
Plaintiff excepted.

To the first issue the jury responded "Yes."

In our opinion the instructions given upon the evidence were misleading and erroneous, in that a general agency does not itself give sanction to what was done. An agency, however comprehensive in its scope, nothing else appearing, contemplates the exercise of the powers conferred for the benefit of the principal. It implies a trust and confidence that the delegated authority will be employed in the honest and faithful discharge of the duties appertaining to the fiduciary relation thus established. A power to collect and settle a debt, conferred without limit, leaves the medium of payment largely at the agent's discretion, but it does not extend to a misapplication of the fund to his own personal advantage. A third party may make the payment, and he is not responsible for the misuse of the money. It is enough for his protection to know that the authority is possessed, whatever disposition may be afterwards made of the fund by the agent. But

when the contract itself involves a misapplication of the money, or other article of value to the agent's own use while it should go to the principal, it will not be enforced to the injury of the latter, unless assent is shown or is implied from past transactions. An agency involves integrity and fidelity in the agent, an exercise of power not for his own, but in the interest and for the intended benefit of him who confers it.

Thus, an agent entrusted with a horse to sell for his principal, cannot dispose of him to his own creditor in payment of his own debt. *Parsons* v. *Webb*, 8 Greenleaf, 38.

An attorney having authority to collect a debt due his principal cannot commute the debt by exchanging it for one due from himself to the debtor. *Kingston* v. *Kincaid*, 1 Wash. C. C., 454.

The very relation between the parties requires good faith, and one who participates, in his own interest, in the conversion of a trust fund to the use of the agent or trustee, is not allowed to take personal advantage therefrom. It is an unwarrantable inference proposed to be drawn from a general agency, a right to appropriate what is received to the agent's own use in the absence of any previous authority or subsequent sanction to such act.

In the present case the defendant contracts with the husband and agent of the *feme* creditor, that timber to be supplied to him for his own known individual use in running his own mill, shall be applied to the extinguishment of her judgment-debt, in disregard of his assumed fiduciary obligation, with no other evidence of her approval of this or other misapplication, beyond that of his general agency to manage her business and collect her debts. Will the court give its sanction to this perversion of authority, concurred in and rendered effectual by the defendant, and thus deprive the *feme* of her property?

In this aspect the charge is misleading. The inquiry should have gone beyond the existence of a general agency, and extended to an assent, actual or implied, to this misuse of her funds. The issue was too narrow and the instruction too restricted. The agent's right to use the property of his principal is not an inci-

dent to its management, and such the jury would naturally understand to be the meaning of the instruction. It must be declared there is error and the plaintiffs entitled to a *venire de novo*.

To this end let this be certified for further proceedings in the court below.

Error.                                                    Reversed.