T. T. GOODING v. JOHN P. MOORE· AND JOHN P. MOORE, JR.,
DOING BUSINESS AS THE SOUTHWARD LUMBER COMPANY.

(Filed 4 March, 1909.)

1. Contracts, Oral—Subsequent Writing—Convenience—No Condi-
tion Precedent—Binding Effect.

When the parties to an oral contract contemplate a subsequent
reducing it to writing, as a matter of convenience and prudence
and not as a condition precedent, it is binding upon them, though
their intent to formally express the agreement in writing was
never effectuated.

2. Evidence—Issues, Withdrawal of—Effect—Nonsuit—Damages.

Upon the withdrawal of an issue from the jury by the trial
judge upon the question of whether the defendant was answerable
in damages for refusing to permit the plaintiff to cut certain
timber, on the ground that such were not recoverable under the
contract sued on, the effect is that of an order of nonsuit upon
the evidence, and it is erroneous when such damages may be
recoverable and there is any competent evidence making for
plaintiff's claim.

3. Principal and Agent—Contracts, Oral—Part Performance—Sub-
sequent Writing—Signature Refused—Material Variation—Parol
Evidence.

When there is evidence tending to show a parol agreement be-
tween plaintiff and defendant's agent for the former to cut all
defendant's timber upon a certain tract of land, and thereafter,
at the agent's request, the plaintiff saw the owner, who agreed
to send to plaintiff a written contract for his signature, containing
the agreement entered into by parol, it is competent for plain-
tiff to show that he refused to sign the contract when presented,
for the reason that, in the material particular as to the quantity
of timber to be cut, and other respects, it differed with the parol
agreement made between them.

4. Principal and Agent—General Agent—Secret Limitation—Ap-
parent Authority.

One dealing with an agent within the apparent scope of his
authority to bind his principal is not bound by any secret limita-
tion on the agent's authority not made known to him; and a
contract for the cutting of timber, made by a general agent with
authority to buy timber interests with plants for the purpose of
cutting it, and who had general management of his principal's
business at the location in question at the time, is made within
the apparent scope of the agent's authority.

ACTION tried before *O. H. Allen, J.,* and a jury, at November Term, 1908, of CRAVEN.

The plaintiff declared on three causes of action:

For first cause of action plaintiff alleged that defendants had entered into a valid and binding contract for plaintiff to cut, log and deliver at defendants' mill the standing timber growing on a certain tract of land, known as the Nixon tract, amounting to about two million feet, and at a contract price of $3.50 per thousand feet, with certain incidental stipulations with regard to advancements, time of payment, etc.; that plaintiff had entered upon the performance of the contract, had delivered 1,040 feet, for which plaintiff had been paid; had cut and delivered about 350,000 feet, on which there was a balance due from defendants of about $600, and that defendants had then wrongfully broken the contract, refusing to allow plaintiff to continue and complete the same, to plaintiff's damage about $4,000.

Second cause of action was for injuries caused by reason of defendants' negligence in failing to supply proper and adequate equipment, according to the stipulations of the contract.

Third cause of action was on a *quantum meruit* for the use of defendants' stock, etc., in work not included or covered by the contract.

Defendants entered a general denial to the plaintiff's second and third causes of action, and on issues submitted there was a verdict for defendants; and as to the first cause of action, denied that it had ever entered into any contract to cut the entire body of timber on the Nixon tract, as claimed by plaintiff, but averred that the timber cut and delivered by plaintiff was under a special contract, restricted to the service rendered, and for which plaintiff had been paid in full.

On the first cause of action the court held, in effect, that there was no evidence tending to show a valid contract between plaintiff and defendants for cutting the entire timber on the Nixon tract, as claimed by plaintiff, and withdrew the issue addressed to that question from the jury, and plaintiff excepted. The court then submitted an issue as to the balance due for the service rendered in cutting and delivering the timber received

by defendants, to wit, the 350,000 feet, and the jury found such balance due and unpaid to be $169.30. Plaintiff moved for a new trial, for error in the ruling of the court as to the first issue. Motion denied, and plaintiff excepted. Judgment on the verdict for $169.30, and plaintiff excepted and appealed.

*D. L. Ward* for plaintiff.
*Simmons, Ward & Allen* for defendants.

HOKE, J., after stating the case: We find no error to plaintiff's prejudice in the disposition of the second and third causes of action, and the judgment is in that respect affirmed; but we do not concur in the ruling of the court as to the first cause of action, and think the issues and all of them framed to present that phase of plaintiff's demand should be submitted to another jury.

While the evidence shows that it was contemplated by both plaintiff and defendant that the contract between them as to the timber on the Nixon tract should be reduced to writing, there was testimony on the part of the plaintiff tending to show that such a requirement was not a condition precedent to the contractual relation, but was only a formality, to be carried out from convenience and prudence and after the contract had been fully made between them; and if this view should prevail the parties would be bound, though their intent to formally express their agreement in writing was never carried out. *Teal v. Templeton,* 149 N. C., 32. Thus the plaintiff, testifying in his own behalf, stated, among other things, that a Mr. Pitts, professing to represent the defendants in the transaction, made a definite contract with plaintiff to cut the timber, and he went to work under its terms; that after he had been at work for nearly a month this Mr. Pitts asked him to go down to Wilmington and confer with the elder Mr. Moore, one of the owners of the plant, and that plaintiff went to Wilmington, and there, after conference, "the contract was written out in pencil and witness agreed to it. I did not read it, but it was read to me. He (defendant) was to have it drawn up and sent to me to sign." This witness further testified that when the copies

were made and sent to him they differed in various and essential particulars from the contract agreed upon, and he declined to sign it, etc., and defendant stopped witness from cutting.

Again, there was testimony on the part of plaintiff tending to show that this Mr. Pitts was a general agent for defendant, not only in purchasing the plant and the timber in question, but in managing their business at this place, and that he made the contract with plaintiff, as claimed by him, within the scope of this agent's apparent authority, and if this view should be accepted the contract made by Pitts would bind the defendants, notwithstanding it exceeded the authority actually given him by defendants, and though he may have violated their instructions in making any contract by parol, unless it should appear that the limitation suggested on the agent's apparent authority was made known to plaintiff before a definite contract was made with him. Tiffany on Agency, 189; Clark on Contracts, 513. In this citation from Clark it is said: "The acts of a general agent, known as such, govern his principal in all matters coming within the proper and legitimate scope of the business to be transacted, although he violates by these acts his private instructions, for his authority cannot be limited by any private instruction unless known to the person dealing with him."

And in Tiffany, *supra,* the same doctrine is thus stated: "The liability of the principal for the acts of his agent within the scope of his 'apparent' authority, as the term is here used, must rest, therefore, not upon a technical estoppel, but upon a broader doctrine of agency, that a principal is liable for acts of his agent which are within the ordinary and usual scope of the business he is employed to transact, notwithstanding undisclosed limitations upon that apparent authority—a doctrine which, as we shall see, applies even when the very existence of the agency is undisclosed. It is true that in many cases all the elements of a technical estoppel may exist, but it is by no means necessary that they do exist, to charge the principal, within this doctrine."

The principal issue in the first cause of action having been withdrawn from the jury, making the ruling of the court, in effect, an order of nonsuit, we have only adverted to evidence which makes in support of plaintiff's claim, and it may be not

improper to note that there is much testimony on the part of defendants contradicting that of plaintiff and tending to show that plaintiff was fully aware of the limitations and restrictions on the authority of the witness Pitts, and that in fact no contract to cut and log this entire timber on the Nixon tract was ever made with plaintiff, either by Pitts or defendants, and that plaintiff fully understood this; but we think these questions at issue should be submitted to a jury for decision, and to that end a new trial is ordered on all the issues relevant to the first cause of action or any part of it.

New Trial.