A. H. STEPHENS v. JOHN L. ROPER LUMBER COMPANY.

(Filed 3 October, 1912.)

1. Principal and Agent — General Agent—Unusual Contracts—Inquiry—Respondeat Superior.

The principal is not bound by the acts of his general agent, unauthorized by him, so unusual and remarkable as to arouse the inquiry of a man of average business prudence as to whether the authority had actually been conferred; for third persons

dealing with the agent may only assume that the agent's acts
are authoritative when they are within the scope of the duties
ordinarily conferred upon agencies of that character.

**2. Same—Contracts to Become Witness—Employer and Employee—
Continued Pay—Idleness.**

The local superintendent of a lumber company has no implied
authority to bind the company to a contract, without its ex-
press consent or its knowledge of any facts or circumstances
that would put it upon inquiry, to drop an employee from its
pay-roll, but continue to pay him a stipulated monthly salary
for his idleness, for the reason that he was to be a witness for
the company in a lawsuit, and it was considered undesirable
that he should appear to be in the company's employment; for
such a transaction is of a nature so unusual that the employee
would be put upon inquiry to ascertain the actual authority con-
ferred by the company on the superintendent to make a contract
of that character.

APPEAL by plaintiff from *Justice, J.,* at April Term, 1912, of
PAMLICO.

Civil action to recover $1,400 alleged to be due by contract.

At the close of plaintiff's evidence, on motion, there was judg-
ment of nonsuit, and plaintiff excepted and appealed.

The facts are sufficiently stated in the opinion of the Court
by *Mr. Justice Hoke.*

*A. D. Ward and D. L. Ward for plaintiff.*
*Moore & Dunn for defendant.*

HOKE, J. Plaintiff, a witness in support of his demand, tes-
tified in effect as follows: That in November or December of
1907, a short while after the panic, he was an employee of de-
fendant company, and in charge of a logging squad in connec-
tion with the plant of said company at Oriental, N. C. That
the superintendent of defendant plant at that place was one
W. J. Moore, in general charge of same, having power to make
contracts, employ and discharge hands, etc. That the general
offices of the company were at Norfolk, Va., the general super-
intendent of defendant lumbering business being one Harriss,
and that the employees of defendant company were paid off
monthly according to a pay-roll sent to the general offices.
That on or about the date specified, November or December,

1907, plaintiff and W. J. Moore as superintendent of defendant's plant at Oriental, entered into the contract sued on, by the terms of which plaintiff was to be dropped from the company's pay-roll for an indefinite period and cease all regular work for the company, and was to be paid during such time as he was unemployed the sum of $100 per month, and meantime was not to take other employment, but hold himself in readiness to resume work when notified. That pursuant to this agreement, plaintiff remained practically idle for fourteen months, when he was again given active employment as a boss of company's logging force at $75 per month. That not long after plaintiff resumed work, Moore, the local superintendent, was discharged by the company, and soon thereafter plaintiff was discharged. Shortly after Moore was discharged plaintiff mentioned his claim for $1,400 against the company to Harriss, general superintendent, and same was repudiated and denied by the company, and after his own discharge the suit was instituted. Plaintiff, repelling the suggestion that it was any part of his motive or inducement for entering into the contract, testified further, that W. J. Moore told him at or about the time the same was made that the company wanted him as a witness in a lawsuit, and that he would be dropped from the pay-roll on that account. Plaintiff admitted that he had been paid for all the work actually done for the company, but said that nothing had been paid on the present claim; that the general superintendent was frequently around the works at Oriental, and that plaintiff had never mentioned the subject to him until after the discharge of Moore, but had frequently mentioned the matter to Moore while he was superintendent at Oriental, and was told by Moore not to be uneasy, that he would get his money.

If it be conceded that the evidence was sufficient to establish the contract, and, further, that the reprehensible purpose to impose plaintiff on the court as an entirely disinterested witness when he was in fact an employee of the company was not sufficiently shown as an inducement to the contract on the part of plaintiff to vitiate it (*Martin v. McMillan,* 63 N. C., 486; *Phillips v. Hooker,* 62 N. C., 193), we are of opinion that the judgment of nonsuit has been properly rendered.

It is not claimed that there was any direct authority from the company to make this particular contract, nor is there any evidence of special instructions limiting the powers of defendant's agent incident to his position. This being true, the real and apparent authority of such agent should be held one and the same, and the right of plaintiff to recover in this case depends upon whether the contract declared on was within the scope of W. J. Moore's powers as general superintendent of defendant's lumbering business at Oriental. *Gooding v. Moore,* 150 N. C., 195; Tiffany on Agency, p. 180.

By virtue of his position, then, this superintendent had general power to do what was usual and necessary to carry on the business entrusted to him, and in furtherance of his employer's interest to make all such contracts as were reasonable and appropriate to that end; but this authority is not without limitations. Such an officer is by no means a universal agent, but is restricted, as stated, to "those acts and contracts usually exercised by other agents in the same line of business under similar circumstances, and must conduct the particular business of the principal in the manner usually employed by other agents of the same kind." 1 Clark and Skyles on the Law of Agency, sec. 203, p. 475.

Again, it is well recognized that a third person dealing with one known to be an agent is not relieved of all obligation in the matter, but is held to the exercise of reasonable prudence, and if an agent, though a general one, departing from legitimate effort in his employer's interests, tenders a contract so unusual and remarkable as to arouse the inquiry of a man of average business prudence, the third party is not allowed to act upon assumptions which ordinarily obtain; he is put upon notice and must ascertain if actual authority has been conferred. 1 Clark and Skyles, p. 509; Mechem on Agency, secs. 289-290; 31 Cyc., pp. 1340-6.

In 31 Cyc. it is said: "A general agent, unless he act under special and limited authority, impliedly has power to do whatever is usual and proper to effect such a purpose as is the subject of his employment. Hence, in the absence of known limitations, third persons dealing with such a general agent have a right to

presume that the scope and character of the business he is employed to transact is the extent of his authority. This rule, as already stated, does not apply when limitations upon the authority of the agent have been brought home to the knowledge of the third person dealing with him, nor when the third person fails to make such inquiry as conditions demand, especially if the facts and circumstances are such as to suggest inquiry. Furthermore, the implied power of any agent, however general, must be limited to such acts as are proper for an agent to do, and cannot extend to acts clearly adverse to the interests of the principal, or for the benefit of the agent personally. And an agent has no implied authority to do acts not usually done by agents in that sort of transaction, nor to do them in other than the customary manner. The most general authority is limited to the business or purpose for which the agency was created."

And in Mechem, *supra:* "Third persons must act in good faith. It is evident that these rules are established for the protection of third persons who act in good faith. As has been stated, every person dealing with an agent is bound to ascertain the nature and extent of his authority. He must not trust to the mere presumption of authority nor to any mere assumption of authority by the agent. He must at all times be able to trace the authority home to its source. Keeping within the scope of that authority, he is safe and cannot be affected by secret instructions of which he was ignorant. But if he had knowledge of the instructions, or notice sufficient to put him upon an inquiry by which they might have been discovered, he will be held bound by them." And further, sec. 290: "The person dealing with the agent must also act with ordinary prudence and reasonable diligence. If the character assumed by the agent is of such a suspicious or unreasonable nature, or if the authority which he seeks to exercise is of such an unusual or improbable character, as would suffice to put an ordinarily prudent man upon his guard, the party dealing with him may not shut his eyes to the real state of the case, but should either refuse to deal with the agent at all or should ascertain from the principal the true condition of affairs."

The wholesome principles embodied in these citations and numerous authoritative decisions here and elsewhere, applying the same, are in condemnation of this alleged contract, and fully sustain the position denying plaintiff recovery thereon. *Bank v. Hay,* 143 N. C., 326; *Williams v. Johnston,* 92 N. C., 532; *Williams v. Whiting,* 92 N. C., 683; *Bank v. Armstrong,* 152 U. S., 346; *Bank of Macon v. Nelson,* 38 Ga., 391; *Craig Selver Co. v. Smith,* 163 Mass., 262; *Upton v. Suffolk Co. Mills,* 65 Mass., 586; *Nephew v. Mich. Central,* 128 Mich., 599; *Friedman v. Kelly,* 126 Mo. App., 279; *Skene, Jr., v. Casualty Co.,* 91 Mo. App., 121.

In *Williams v. Johnston, supra, Chief Justice Smith,* delivering the opinion, said: "An agency, however comprehensive in its scope, nothing else appearing, contemplates the exercise of the powers conferred for the benefit of the principal. It implies a trust and confidence that the delegated authority will be employed in the honest and faithful discharge of the duties appertaining to the fiduciary relation thus established."

In *Upton v. Suffolk Co. Mills* it was held, "That a general selling agent has no authority to depart from the usual manner of accomplishing what he is employed to effect."

In *Friedman v. Kelly, supra,* a well-reasoned case and sustained by abundant authority, the Court held: "Where an agent, such as a traveling salesman, assumes, in the conduct of the sale of goods, authority which he did not in fact have and of such extraordinary character as would put a reasonably prudent man upon his inquiry, such party dealing with him cannot in that case hold his principal on the ground of apparent authority. Where a traveling salesman selling ladies' cloaks for his principal agreed with a purchaser that he might retain the cloaks until after the season was over and then return such as were not satisfactory, this was an agreement so unusual and extraordinary that the purchaser should have taken notice that the agent had no authority to make it, and the purchaser could not claim the right to return the cloaks on the ground that the agreement was within the apparent scope of the agent's authority, especially where the evidence showed that he knew the proposition was extraordinary."

This contract, by which the plaintiff, to use his own language, "was put on the loafing list for fourteen months, doing practically nothing for the company's benefit," and where there was nothing either in the pay-rolls or elsewhere to put the company or its general officers on notice of its existence or its terms, is so very remarkable and unusual and altogether comes in such questionable shape and circumstance that his Honor was clearly right in holding that no recovery should be allowed thereon in a court of justice.

There is no error, and the judgment of nonsuit is

Affirmed.