It was chiefly objected to the validity of the verdict that there were no facts in evidence tending to show authority on the part of J. R. Wood to bind the defendant company to payment of plaintiff's claim; but, on the record, we are of opinion that the position cannot be maintained. A general agent is said to be one who is authorized to act for his principal in all matters concerning a particular business or employment of a particular nature. Tiffany on Agency, p. 191. And it is the recognized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually "confided to an agent employed to transact the business which is given him to do," and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed. Latham v. Field, 163 N.C. 356; Stephens v. Lumber Co.,160 N.C. 107; Gooding v. Moore, 150 N.C. 195; Tiffany on Agency, pp. 180-184-191 et seq.
The power of an agent, then, to bind his principal may include not only the authority actually conferred, but the authority implied as usual and necessary to the proper performance of the work intrusted to him, and it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment. Law ReportingCo. v. Grain Co., 135 Mo. App. Rep., pp. 10-15; 31 Cyc., pp. 1326-1331.
In the Missouri case, Broaddus, P. J., delivering the opinion, quotes from Mechem on Agency, sec. 282, to the effect that the authority of agents consists:
"First, and primarily, of the powers directly and intentionally conferred by the voluntary act of the principal.
"Second, of those incidental powers which are reasonably necessary and proper to carry into effect the main powers conferred and which are not known to be prohibited.
"Third, of those powers which usage and custom have added to the main powers, and which the parties are to be deemed to have had in contemplation at the time of the creation of the agency, and which are not known to have been forbidden.
(636) "Fourth, of all such other powers as the principal has, by his direct act or by negligent omission or acquiescence, caused or *Page 727 
permitted persons dealing with the agent reasonably to believe that the principal had conferred.
"Fifth, of all those other powers whose exercise by the agent the principal has subsequently, with full knowledge of the facts, ratified and confirmed."
And further cites, with approval, Kingsley v. Fitts, 51 Vt. 414, to the effect that: "The scope of an agency is to be determined not alone from what the principal may have told the agent to do, but from what he knows or ought to know, in the exercise of ordinary care and prudence, the agent is doing in the premises." And, while it is true, as held in Daniel v. R. R.,136 N.C. 517, and Francis v. Edwards, 77 N.C. 271, and other well considered cases, that neither the existence nor the extent of an agency may be shown by either the declarations or acts of an agent, and by them alone, it is also established that the acts of an agent, in the course of his employment and indicative of authority, may be of such character and circumstance or so often repeated as to permit a fair and reasonable inference that they were approved or knowingly permitted by the principal, and, in this way, may, of themselves, become relevant on the question of authority expressly conferred. Newbury v. R. R., 167 N.C. 50; R. R. v.Dickinson, 78 Ark. 783; Lytle v. Bank, 121 Ala. 215; Harvester Co. v.Campbell, 43 Tex. Civ. App. 421; Doan v. Duncan, 17 Ill. 272; 31 Cyc., p. 1662. In this last citation the principle is thus stated: "As a general rule, the fact of agency cannot be established by proof of the acts of the pretended agent, in the absence of evidence tending to show the principal's knowledge of such acts, or assent to them. Yet when the acts are of such a character, and so continued, as to justify an inference that the principal knew of them, and would not have permitted the same if unauthorized, the acts themselves are competent evidence of agency."
Applying these principles, as stated, there was not only some evidence tending to show authority in J. R. Wood to make the contract, as stated, but, in our opinion, it clearly justifies the verdict rendered by the jury.
True, there was evidence for the defendant tending to show that Wood had no actual authority to make the agreement or to bind the company under it; both Wood and McNeill, the secretary and treasurer of the company, so testify, and the payments by Wood are explained by the statement of these witnesses that the company kept as much as $500 in a bank here in Raleigh, subject to his check, and beyond this he was not allowed to go, and, as to the two payments by the company on the present account, defendant's evidence tends to show that one was made on the written order of Chisholm Clark and the other on the representations of Wood that it was necessary to make it (637) *Page 728 
to protect material already on the ground and presently required for the construction of the building. Much stress was laid, too, on the fact that several of the witnesses spoke of Wood as foreman, and, certainly, an ordinary foreman, in the sense of a leader of a squad of hands, would not, from his position alone, have the right to bind his principal in a contract of this character.
A perusal of the testimony, however, will disclose that this man was not merely a foreman, in the ordinary meaning of the term, but he had entire charge of the work here in Raleigh. Thus, Mr. Carey J. Hunter, one of the directors, after saying that Wood was the local man of the King Lumber Company in charge of the building as "foreman," states further: "Mr. Wood was the company's representative, and we dealt with him in regard to the construction of the building. Of course, I don't know whether the dealings had to be approved by the lumber company afterwards or whether there was an understanding with them or not. Our dealings were with Mr. Wood."
J. R. Wood speaks of himself, in one place in his testimony, as supervisor or superintendent, and McNeill, the secretary and treasurer, says of him: "He had been our superintendent for six years." True, this witness said, also, that "Not only had Wood no authority to make the contract, as alleged, but he was instructed positively not to do so"; but, from the evidence of this witness and from others, testifying for plaintiff, it appears that J. R. Wood was in charge and control of the work here for the entire time; that he bought material from plaintiff and others and paid for it in cash and by check; that he hired hands and paid them off, not only those directly under him, but the hands of Chisholm Clark, and after these men had abandoned the job, he took it up and had the same completed; and it was made to appear, further, as heretofore stated, that, after the promise relied upon by plaintiffs, there were two substantial payments on this account made by defendant company, and from this and other facts in evidence we think that it is clearly the permissible inference that the contract and agreement made by Wood was within the scope of his agency, and, this being true, that the binding effect of it could not be destroyed or sensibly impaired by reason of special and private restrictions put upon his powers by his principal, unknown to plaintiff and others who dealt with him; and we are of opinion, further, that the acts of Wood in the course of his agency were of a kind and character and so continued and repeated as to permit the inference that they were known to and approved by the company, and, in themselves, afforded evidence of authority in the premises.
There is nothing in our present decision that militates or is intended to militate against the cases of Bank v. Hay, 143 N.C. 326, or *Page 729 
of Swindell v. Latham, 145 N.C. 144, or Stephens v. Lumber (638)Co., supra, or the more recent case of Wynn v. Grant,166 N.C. 39, in all of which the acts of the agent were disallowed.
In Hay's and in Swindell's cases, supra, the contracts in question were held to have been beyond the scope of agents' authority, real or apparent, the first being a draft by a local insurance agent, of restricted power, on the general agent of the company, and the second where the agent, intrusted with the power to run a certain business on a cash basis, had signed the note of his principal for borrowed money, and to these the Court applied the wholesome principle that one who deals with an agent must "ascertain correctly the scope and extent of his authority"; but this, as stated, was on the ground that the acts of the agent were beyond the scope of his apparent authority, for, in ordinary instances, it is only to this that a third person is required to look. In Wynn's case, supra, there were facts in evidence, ultra, tending to show notice of limitations on the agent's powers, and in Stephens' case, supra, the character of the contract was so out of the ordinary as to put the claimant on inquiry and, in itself, to afford notice of lack of authority.
The objection raised, on the trial below, that recovery was barred under the statute of frauds and because the obligation of Wood, if made, was not in writing, was very properly abandoned here, the facts in evidence, which were accepted by the jury, tending to show that the credit was extended to the company as an original obligation and on a transaction in which it had a pecuniary interest. Peele v. Powell, 156 N.C. 554, citing Dale v. LumberCo., 152 N.C. 653; Sheppard v. Newton, 139 N.C. 533.
While we have dealt with the objections made to the validity of the verdict by reason of their general importance and because they are directly presented in the record, the questions are not of practical moment in this case because of the admissions in the pleadings that the owners of the building are still indebted to defendant company, the principal contractor, to an amount sufficient to pay the claim sued for, and the plaintiffs have given the notices and perfected their lien as provided by our statute. Revisal, ch. 48, secs. 2019, 2020, 2021.
In such case, under Brick Co. v. Pulley, ante, 371, the debt due from the owners to the defendant, the principal contractor, is applicable to plaintiff's demand, and this regardless of the state of the account between defendant and the subcontractors, Chisholm Clark.
There is no error, and the judgment below must be affirmed.
No error.
Cited: Furniture Co. v. Bussell, 171 N.C. 485; Ferguson v. AmusementCo., 171 N.C. 666; Brimmer v. Brimmer, 174 N.C. 439; Powder *Page 730 Co. v. Denton, 176 N.C. 433; Lumber Co. v. Johnson, 177 N.C. 51; Lane v.Engineering Co., 183 N.C. 309; Fisher v. Lumber Co., 183 N.C. 490;Strickland v. Kress, 183 N.C. 537; Crutchfield v. Rowe, 184 N.C. 213; Beckv. Wilkins-Ricks Co., 186 N.C. 214; Hunsucker v. Corbit, 187 N.C. 503;Bobbitt v. Land Co., 191 N.C. 328; Coxe v. Dillard, 197 N.C. 346; Bank v.Sklut, 198 N.C. 592; Maxwell v. Distributing Co., 204 N.C. 317; Dixson v.Realty Co., 204 N.C. 525; White v. Johnson Sons, Inc., 205 N.C. 775; R.R. v. Lassiter Co., 207 N.C. 414; Belk's Department Store v. Ins. Co.,208 N.C. 270.
(639)