The action was to recover damages for breach of an alleged contract conferring on plaintiff the right to construct the pipeline for a sewer from the new Federal building in Wilkesboro, N.C. On denial of *Page 607 
the contract and any and all liability thereunder, the jury rendered the following verdict:
1. Did defendant enter into a contract with plaintiff A. U. Billings to employ said Billings to cut the ditch and lay the sewer line at the price of 40 cents per running foot, as alleged in the complaint? Answer: "Yes."
2. Was the plaintiff able, willing, and ready to do and perform the work according to contract? Answer: "Yes."
3. Did defendant breach said contract as alleged in the complaint? Answer: "Yes."
4. What damages, if any, are plaintiff entitled to recover of defendant? Answer: "$220."
Judgment on the verdict and defendant excepted and appealed, assigning for error chiefly a refusal to nonsuit plaintiff and the instruction of his Honor on the first issue as follows: "You are instructed that if you believe the evidence and find the facts to be as testified by the witnesses and described by the documents produced in evidence, you will answer the first issue `Yes.'"
There was evidence on the part of the plaintiff tending to show that plaintiff, a contractor of extended experience and engaged at the time in "grading off the foundation" for the new (572) Federal building at Wilkesboro, N.C. on 16 February, 1916, received a letter from William Wilby, defendant, then at Selma, Ala., and who had the subcontract for the plumbing and laying the sewer line, inviting a proposition from plaintiff for cutting the ditch and laying the line, etc., according to survey and specifications which had been already made by the government; that on 13 January, 1916, plaintiff replied by telegram from North Wilkesboro as follows:
"Will put in sewer line according to specifications for $500, you furnish pipe and material North Wilkesboro. Wire at once is you accept this. (Signed) A. U. BILLINGS."
On same date defendant sent by wire a night letter as follows:
"Forty cents per running foot is best I can do, I furnish pipe and you cement. I can do it myself for less than this, but want it put in before my man comes. If I cannot get it for the above amount, will wait and put it in myself.
(Signed) WILLIAM WILBY." *Page 608 
To this plaintiff replied by telegram at 10:40 A. M., 14 January:
"Night letter received. Will accept. Send contract signed at once."
That plaintiff was ready, able, and willing to do the work and had the hands and tools there for the purpose, and on the night before he was to begin, which was several days after plaintiff's last message, plaintiff received a telegram from defendant to the effect that he would advise plaintiff in a day or two about the work; that defendant never did advise plaintiff further about it, but soon thereafter undertook the work himself, etc.; that plaintiff's damage in the loss of the contract was about $250.
On matters relevant to the issue, defendant introduced his own deposition to the effect "that he was plumber resident in Selma, Ala., and had a subcontract for installing the plumbing and sewer for the building, and, in addition to the telegrams already in evidence, there was attached to his disposition two other telegrams in terms as follows, one purporting to be from plaintiff to defendant, dated 18 January, 3 P.M.:
"I accept your sewer proposition. Wire at once if you accept mine.
Start work at once in the morning. (Signed) A. U. BILLING:."
(573) And another from defendant to plaintiff:
"Will advise you within next few days regarding sewer proposition.
(Signed) WILLIAM WILBY."
In reference to the additional telegrams attached to the deposition and purporting to be from plaintiff, "I accept your sewer proposition. Wire at once if you except mine. Start work in morning,' plaintiff recalled, testified that he did not send nor authorize any one else to send such a telegram. On perusal of this evidence, we are clearly of opinion that a definite contract to let the work in question was constituted between these parties by the telegram of plaintiff, dated 14 January, in reply to defendant's night letter and in terms: "Night letter received: will accept. Send contract signed at once," and this result is not affected by the closing words of the message, "Send contract signed," etc.
This, by correct interpretation, meaning merely that it was the desire and preference of the plaintiff that the agreement they had made should be written out and formally signed by the parties, and it is the recognized position here and elsewhere that, when the parties have entered into a valid and binding agreement, the contract will not be avoided because of their intent and purpose to have the same more formally drawn up and executed and which purpose was not carried *Page 609 
out. Gooding v. Moore, 150 N.C. 195; Teal v. Templeton, 149 N.C. 32;Sanders v. Pottlizer Bros. Trust Co., 144 N.Y. 209; Clark on Contracts, 2 Ed., 29, and authorities cited.
In Moore's case, supra, it was held that "when parties to an oral contract contemplate a subsequent reducing of it to writing as a matter of convenience and prudence and not as a condition precedent, it is binding on them through their intent to formally express the agreement in writing was never carried out."
And in 144 N.Y., supra, "If the correspondence and telegrams between the parties contain all the details of a contract, it is enforcible though they intended that their agreement should be formally expressed in a single paper which, when signed, should be the evidence of what already had been agreed upon."
This being the correct position, we must approve his Honor's charge on the first issue that, "if the jury believe the evidence and find the facts to be as testified by the witness and disclosed by the documents produced in evidence, you will answer the first issue `Yes.'"
The parties having entered into definite contract by the message from the plaintiff of date 14 January, the additional message introduced by the defendant, even if genuine, evinces no purpose to abandon any rights he had acquired or to reopen the question of what had been done between them, and if it were otherwise, the charge of his Honor, when considered in reference to the testimony and the conditions (574) presented, could only mean and was clearly intended to mean that if the parol evidence given by plaintiff to the effect that he had never sent this telegram or authorized any one else to do so, should be accepted by the jury and the fact so found, such message should not be allowed to affect the determination of the issue.
On the record, we find no error in the charge or in the refusal of the motion to nonsuit, and the judgment below must be affirmed.
Cited: Wilkins v. Cotton Mills, 176 N.C. 80.
(575)