SOUTHGATE JONES v. THE BANK OF CHAPEL HILL.

(Filed 1 February, 1939.)

1. **Principal and Agent § 7—**

   Where plaintiff establishes the authority of the agent to make the contract sued on, either as being within the agent's apparent authority or by ratification, evidence of the alleged contract is competent as against the principal.

2. **Principal and Agent §§ 8, 12: Banks and Banking § 6—Evidence held to show cashier's authority to make compromise settlement or ratification of same by the bank.**

   Plaintiff's evidence tended to show that he was indebted to defendant bank in a large sum, that he had financial reverses and could not meet

his obligations, and that he compromised his indebtedness to the bank by executing a new note in a smaller sum, and securing said new note with additional collateral, and that the bank agreed to return his old notes after the expiration of the four months period under the Bankruptcy Act. The evidence further disclosed that all negotiations were had with defendant's cashier, who held that position for some twenty years and who was the only active officer of the bank, that the negotiations and correspondence covered a period of years, and that the bank sold some of the collateral pledged for the new note and applied the proceeds thereto, placed the old notes in its reserve account with any amount collected to be credited to its reserve or profits account, and did not demand payment of the old notes for a period of years after the consummation of the transaction. *Held:* The evidence was sufficient to show that the contract of settlement was within the apparent scope of the cashier's authority, since the bank held him out as its only active executive officer for a long period of time and all the bank's business was generally transacted through him, and further, that the bank ratified said contract by accepting the benefits in selling the collateral pledged for the new note.

**3. Principal and Agent § 8—**

The principal is bound by acts of his agent which are within the apparent scope of the agent's authority, since third persons dealing with the agent are not chargeable with secret limitations on the agent's authority.

**4. Principal and Agent § 12—**

A principal may not ratify the beneficial parts of a contract made by his agent and repudiate the burdens, but by accepting the benefits he ratifies the entire contract and is estopped to deny his agent's authority.

**5. Compromise and Settlement § 3—**

Evidence that defendant bank agreed to accept a smaller note with additional collateral from an insolvent borrower in payment of old notes in a larger sum, without evidence to the contrary, *held* to support court's instruction that if jury believed the evidence to answer the issue of compromise and settlement in the affirmative.

APPEAL by defendant from *Bone, J.,* at April-May Civil Term, 1938, of DURHAM. No error.

The plaintiff on 12 January, 1933, was indebted to defendant in the sum of $16,700, evidenced by four promissory notes. The plaintiff had financial reverses and became involved to such an extent that he could not meet his obligations. He made a compromise settlement of his indebtedness with defendant for $6,800 and $3,800, new money. A note for $10,600, secured by deed of trust on certain real estate, was made to secure defendant, also other collateral was deposited with defendant. Plaintiff had paid said indebtedness down to $2,850.

The plaintiff alleges: "That the first intimation or suggestion that the plaintiff had that it was the purpose of the defendant bank to repudiate this agreement and settlement with the plaintiff entered into in

January, 1935, was on April 7, 1937, when the defendant bank wrote plaintiff to this effect, which letter was followed by another letter from the cashier of the bank dated April 14, 1937, stating that one of the old notes was long past due and the bank was expecting the plaintiff to pay the same, and this letter was written notwithstanding the many assurances on the part of the bank that the old notes would be cancelled and returned to the plaintiff as soon as it received said certificate from the bank's attorney; that no interest has been paid on any of said old notes since 1933, and since the compromise settlement of these notes in January, 1935, there has been no intimation or suggestion on the part of the defendant bank that any interest should be paid on said notes, and all of said old notes aggregating $16,700 were fully paid by the compromise settlement hereinbefore set forth.    Wherefore, plaintiff prays the Court: (1) That upon payment to the defendant by the plaintiff of the sum of $2,850.00 that the defendant be required and directed to cancel and deliver to the plaintiff the said note of $2,850.00 which was due on May 1, 1937, together with all of the collateral security deposited therewith and more particularly described in the complaint.    (2) That the defendant be required and directed to cancel and deliver to the plaintiff four notes aggregating $16,700.00 as well as the E. H. Meadows assignment."

The sole material issue submitted to the jury, which was answered, "Yes," is as follows: "Did the plaintiff enter into a compromise settlement of the four notes of the plaintiff held by the Bank, aggregating $16,700.00, in January, 1935, as alleged in the complaint?"

The court below charged the jury as follows: "The plaintiff has offered evidence tending to show that such a settlement was made. There is no evidence to the contrary.    I therefore instruct you that if you believe all the evidence and find the facts to be as they tend to show, that you should answer the first issue, 'Yes.'    Take the case, gentlemen."

To the above charge the defendant excepted and assigned error.    The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.    The material ones and necessary facts will be considered in the opinion.

*S. C. Brawley and J. S. Patterson for plaintiff.*
*Fuller, Reade, Umstead & Fuller for defendant.*

CLARKSON, J.    The defendant at the close of plaintiff's evidence and at the conclusion of all the evidence, made motions in the court below for judgment as in case of nonsuit.    C. S., 567.    The motions were overruled and in this we can see no error.

The defendant excepted and assigned error, which cannot be sustained, to all the evidence relating to the alleged contract of settlement between the plaintiff and its cashier, M. E. Hogan, in reference to the compromise of the four notes totaling $16,700.00. M. E. Hogan was dead at the time of the trial. Hogan was cashier of the bank for twenty years and was the only active officer of its bank. The defendant had no other active officer of its bank. Plaintiff's dealing for years was solely and alone with Hogan. Many letters through a period of years were exchanged between plaintiff and Hogan, and many payments on the notes and renewals were made with Hogan. Defendant had certain collateral and sold same. It now has collateral of plaintiff—same was given to and deposited with the defendant Bank under the contract and agreement between the plaintiff and defendant Bank's cashier, which contract the defendant now seeks to repudiate. The attorney for the Bank testified that he remembered the time Mr. Hogan and plaintiff had him prepare the note for $10,600, secured by deed of trust, and Mr. Hogan had him to investigate the record and gave an opinion as to the title.

From the long course of dealings between plaintiff and defendant, the defendant knowing all of the facts relative to the contract and settlement by its conduct, has ratified same. Under the facts and circumstances of the case, we think the cashier of the defendant Bank had the authority to make the contract here involved because the Bank had held him out as its only active executive officer for a long period of time, and all the business plaintiff had with the Bank was generally transacted with said cashier. If the cashier did not have such authority, the Bank by its long silence and acquiescence, and by its receiving and using the benefits accruing to it has ratified said contract, and every part thereof, both good and bad, and it cannot now be heard to contend otherwise.

In Tiffany on Agency, ch. VIII, p. 180, it is held: "The principal is liable upon a contract duly made by his agent with a third person (1) When the agent acts within the scope of his actual authority; (2) When the contract, although unauthorized, has been ratified; (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority. 'Apparent authority,' as the term is used in the foregoing section, includes authority to do whatever is usual and necessary to carry into effect the principal power conferred upon the agent and to transact the business which he is employed to transact; and the principal cannot restrict his liability for acts of his agent within the scope of his apparent authority by limitations thereon of which the person dealing with the agent has no notice. (At p. 181) . . . . The principal may be

estopped to deny that a person is his agent or that his agent has acted within the scope of his authority."

In 2 Amer. Jurisprudence, sec. 208, we find: "All acts of an agent in the discharge of his duties and within the scope of his authority, whether that authority is express, implied, or apparent, are obligatory upon the principal; no ratification or assent on the latter's part is necessary to give them validity. The binding effect of an agent's acts does not, however, necessarily depend upon the existence of authority in the agent at the time the act was done. It is fundamental that acts performed by an agent beyond the scope of his authority, and even acts performed by one who in point of fact is not an agent, but who assumes to act as an agent, may, if they could lawfully have been delegated, be ratified by the principal or by one in whose behalf they are assumed to be done. As applied to the law of agency, ratification is the affirmance by a person of a prior act which did not bind him, but which was done or professed to be done on his account, whereby the act is given effect as to some or all persons, as if originally authorized."

*Hoke, J.,* in *Powell v. Lumber Co.,* 168 N. C., 632, at p. 635, speaking to the question, says: "A general agent is one who is authorized to act for his principal in all matters concerning a particular business or employment of a particular nature. Tiffany on Agency, p. 191. And it is the recognized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually 'confided to an agent employed to transact the business which is given him to do,' and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed (citing authorities). The power of an agent, then, to bind his principal may include not only the authority actually conferred, but the authority implied as usual and necessary to the proper performance of the work entrusted to him, and it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment," citing authorities. *Bobbitt Co. v. Land Co.,* 191 N. C., 323 (328); *Maxwell v. Distributing Co.,* 204 N. C., 309 (317-18); *Dixson v. Realty Co.,* 204 N. C., 521; *R. R. v. Lassiter & Co.,* 207 N. C., 408; *Belks Dept. Store v. Ins. Co.,* 208 N. C., 267 (271); *Grubb v. Motor Co.,* 209 N. C., 88.

The authorities cited in defendant's brief are distinguishable from the case at bar. The case of *Bank v. Lennon,* 170 N. C., 10, cited by defendant, quotes from the note to *Bank v. Forsyth,* 28 L. R. A., (N. S.), 501. The same note just below the part quoted in *Bank v. Forsyth,* is as follows: "Of course, if the bank ratifies the action of its officers, or fails to repudiate it within a reasonable time, then the bank will be liable, the same as any principal who ratifies or acquiesces in the acts of his agent." *Bank v. Grove,* 202 N. C., 143 (147).

The case of *Bank v. Forsyth, supra,* cites and quotes from the opinion of *Martin v. Webb,* U. S., 28 Law Ed., 49. The facts in that case are similar to the present. At p. 52, it is said: "It is willing to accept all the benefits resulting from the acts of its cashier, but endeavors to escape the burdens attached to it by the agreement of the parties. . . . To permit the Bank, under these circumstances, to dispute the binding force of the arrangement made by its cashier in reference to Kenney's indebtedness, including the cancellation of the old note and trust deeds and the acceptance of the new ones, would be a mockery of justice. . . . His authority may be by parol and collected from circumstances. It may be inferred from the general manner in which for a period sufficiently long to establish a settled course of business, he has been allowed, without interference, to conduct the affairs of the bank. It may be implied from the conduct or acquiescence of the corporation, as represented by the board of directors. When, during a series of years or in numerous business transactions, he has been permitted, without objection and in his official capacity, to pursue a particular course of conduct, it may be presumed, as between the Bank and those who in good faith deal with it upon the basis of his authority to represent the corporation, that he has acted in conformity with instructions received from those who have the right to control its operations. Directors cannot, in justice to those who deal with the Bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than from time to time, to elect the officers of the Bank and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business."

It is universally held by all courts everywhere that where an agent exceeds his authority in making a contract, the principal cannot ratify and accept that part which is good and repudiate that part which is

bad, or "take the rose without the thorn." *Manly v. Beam,* 190 N. C., 659; *Trust Co. v. Lewis,* 200 N. C., 286 (287); *Bank v. Oil Co.,* 205 N. C., 778, are inapplicable to the facts in the present case.

Years passed by without any demand on plaintiff to pay these notes. They were not delivered originally to plaintiff after compromise was made, as defendant wanted to wait until the four months under the Bankruptcy Act expired (chapter 3, U. S. C. A., sec. 21). Thereafter repeated demands were made by plaintiff until the institution of this action. We see no error in the charge. In the minutes of the meeting, 2 April, 1935, is the following: "Upon motion by Hogan and seconded by Lloyd, the following loans were ordered to be charged to reserve account, and anything later collected on same to be credited to reserve or profits account. Southgate Jones, $6400.00." This language could not be so construed as negativing plaintiff's testimony. At least, it would indicate that the $6,400 was "Gone with the wind," to some extent corroborating plaintiff.

For the reasons given, in the judgment of the court below there is
No error.