MORPUL RESEARCH CORPORATION v. WESTOVER HARDWARE, INC.

(Filed 24 February, 1965.)

**1. Corporations § 8—**

The position of manager of a corporation implies that the person holding that corporate office is in charge of the affairs of the company with respect to the property and business with which he is associated, with the power to do those things necessary for the discharge of such duties.

**2. Same; Principal and Agent § 5—**

The principal is bound by those acts of the agent which are within the authority actually conferred upon him and those acts within his apparent authority, and an agent has the apparent authority to do the usual things necessary to the transaction of the business which the agent is employed to do.

**3. Same—**

Evidence tending to show that plaintiff delivered certain appliances to defendant's store upon order of the manager of the store and that the store received the appliances, demonstrated and offered them for retail sale, *is held* sufficient to overrule nonsuit upon the question of the manager's apparent authority to order the appliances for his principal.

**4. Same—**

The doctrine of apparent authority cannot obtain when the superior of the alleged agent has affirmatively denied the agent's authority in the premises to the knowledge of the person dealing with the agent.

**5. Same—**

Where plaintiff's evidence is sufficient for the jury on the question of the apparent authority of defendant's agent to order the appliances in question, but defendant introduces evidence that the agent's superior told plaintiff's salesman that the appliances might be delivered only upon consignment, it is error for the court to fail to instruct the jury that on defendant's evidence the agent had no authority to purchase the goods.

**6. Trial § 33—**

It is error for the court to fail to instruct the jury upon a substantial feature of the case presented by the evidence, even in the absence of a request.

APPEAL by defendant from *Shaw, J.*, February 17, 1964, Civil Session of GUILFORD, Greensboro Division, docketed and argued as No. 594 at Fall Term 1964.

Plaintiff instituted this action August 20, 1963, in the Greensboro Municipal-County Court to recover for ten portable steam cabinets delivered by plaintiff, a corporation, to defendant, a corporation, on or about January 26, 1963.

Plaintiff alleged that defendant "through its authorized agent, accepted and agreed to pay for the said steam cabinets the total sum of $1,499.50 within a period of thirty (30) days, a cash discount of 2% being allowed for payment within ten (10) days." Defendant, denying there was a sale, alleged that, pursuant to agreement, said cabinets were delivered and received solely on a consignment basis.

A trial, without a jury, in said municipal-county court resulted in a judgment that plaintiff "have and recover nothing of the defendant," from which plaintiff appealed to the superior court.

Upon trial *de novo* in the superior court, the court submitted, and the jury answered, the following issues: "1. Did the plaintiff and defendant enter into a contract for the purchase of steam cabinets as alleged in the complaint? Answer: Yes. 2. If so, what amount, if any, is the plaintiff entitled to recover from the defendant by reason thereof? Answer: $1,349.75."

Judgment for plaintiff, in accordance with said verdict, was entered. Defendant excepted and appealed.

*Smith, Moore, Smith, Schell & Hunter and Jack W. Floyd for plaintiff appellee.*

*Jordan, Wright, Henson & Nichols and Karl N. Hill, Jr., for defendant appellant.*

BOBBITT, J. Plaintiff's evidence tends to show the alleged contract of sale was entered into by Ernest W. Azer, then employed by plaintiff as "a special representative," and Robert Bartel, then employed by defendant as manager of defendant's Westover Shopping Center store in Charlotte, N. C., or of its appliance department.

Defendant's evidence tends to show Bartel was sales manager of the appliance department of said store; that Bartel had no authority to act for defendant in the purchase of merchandise; that all purchases by defendant were made on (serially numbered) purchase order forms; that no purchase was authorized unless and until a purchase order therefor was approved and signed by Jerry Melton, the president, also the "owner and manager," of defendant; and that no purchase order was issued for said steam cabinets.

Azer testified that, while his negotiations were with Bartel, he was introduced to Jerry Melton and knew he "was the owner." Evidence for defendant includes the following: Azer brought the ten cabinets to defendant's store. One was unpacked and hooked up for demonstration. Azer was introduced to Melton as owner. Melton testified: "I told Mr. Azer in no uncertain terms, I said, 'I do not want anything to do with these steam cabinets except on a consignment basis — if they sell, okay — if they don't sell, you come down here, load them up in your station wagon and like you brought them down here, and take them back with you.'" Defendant offered evidence in corroboration of said testimony. Azer testified no such statement was made to him by Melton.

Other evidence tends to show: The efforts of defendant's salesmen to sell the cabinets were unsuccessful. Plaintiff demanded payment. Defendant insisted the cabinets were received on consignment. In June 1963, defendant returned to plaintiff "eight chairs, and five steam generators." "One chair and the five (?) steam generators" ("the delivery boy apparently overlooked them") are still "over in the back" of defendant's said store. One unit was given by Melton to a friend. Defendant's check in the amount of $149.75 was issued to and cashed by plaintiff as payment for this unit.

The foregoing indicates the gist of the evidence tending to support the respective contentions of plaintiff and defendant. Further discussion of the evidence is unnecessary to decision.

We consider first defendant's assignments of error addressed to the denial of its motion for judgment of nonsuit.

There was plenary evidence that Bartel, acting for defendant, ordered the ten cabinets upon the terms alleged; that Bartel was *manager* of defendant's Westover Shopping Center store (defendant had one or more other stores) or of the appliance department of said store; and that, pursuant to Bartel's order, the cabinets were delivered to and placed in defendant's said store and demonstrated and offered for sale by defendant's salesmen.

In *Kelly v. Shoe Co.*, 190 N.C. 406, 409, 130 S.E. 32, the opinion of Varser, J., states: "The term 'manager,' applied to an officer or representative of a corporation, implies the idea that the management of the affairs of the company has been committed to him with respect to the property and business under his charge. Consequently, his acts in and about the corporation's business, so committed to him, is within the scope of his authority. (Citations.) The designation 'manager' implies general power, . . . (Citations.) The term 'manager' implies the exercise of judgment and skill. (Citations.) The term 'general manager'

may imply still greater authority, . . . (Citations.)" See also *Gillis v. Tea Co.*, 223 N.C. 470, 474, 27 S.E. 2d 283.

An oft-quoted excerpt from the opinion of Hoke, J. (later C.J.), in *Powell v. Lumber Co.*, 168 N.C. 632, 635, 84 S.E. 1032, states the pertinent rule as follows:

"A general agent is said to be one who is authorized to act for his principal in all matters concerning a particular business or employment of a particular nature. Tiffany on Agency, p. 191. And it is the recognized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually 'confided to an agent employed to transact the business which is given him to do,' and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed. (Citations.)

"The power of an agent, then, to bind his principal may include not only the authority actually conferred, but the authority implied as usual and necessary to the proper performance of the work intrusted to him, and it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment. (Citations.)"

Our decisions adopt and quote the following statement from Tiffany on Agency, pp. 180-181, *viz.*: "The principal is liable upon a contract duly made by his agent with a third person — (1) When the agent acts within the scope of his actual authority; (2) When the contract, although unauthorized, has been ratified; (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority. 'Apparent authority,' as the term is used in the foregoing section, includes authority to do whatever is usual and necessary to carry into effect the principal power conferred upon the agent and to transact the business which he is employed to transact; and the principal cannot restrict his liability for acts of his agent within the scope of his apparent authority by limitations thereon of which the person dealing with the agent has not notice. The principal may be estopped to deny that a person is his agent, or that his agent has acted within the scope of his authority." *Wynn v. Grant*, 166 N.C. 39, 47, 81 S.E. 949; *Brimmer v. Brimmer*,

174 N.C. 435, 439-440, 93 S.E. 984; *Jones v. Bank,* 214 N.C. 794, 797, 1 S.E. 2d 135.

Here, the evidence favorable to plaintiff tends to show that Jerry Melton had knowledge: (1) that, pursuant to negotiations between Bartel and Azer, the cabinets had been delivered to defendant; (2) that defendant received an invoice for said cabinets setting forth the terms of sale alleged in the complaint; and (3) that thereafter defendant's salesmen demonstrated and endeavored to sell the cabinets. Moreover, the evidence favorable to plaintiff tends to show plaintiff had no knowledge or notice of limitations, if any, upon Bartel's authority to act for defendant in purchasing the cabinets. In this connection, it is noteworthy that the alleged contract was for articles in the nature of appliances and not excessive in respect of quantity or cost. See *R. H. Kyle Furniture Co. v. Russell Dry Goods Co. (Ky.),* 340 S.W. 2d 220.

The conclusion reached is that the evidence, when considered in the light most favorable to plaintiff, was sufficient to support a finding that Bartel, acting for defendant, ordered the cabinets on the terms alleged, and that in so doing he was acting within the apparent scope of his authority. It is noted: The complaint does not allege ratification or facts on which such plea could be based. Hence, our consideration of the motion for nonsuit has been restricted to whether the evidence was sufficient to support a finding that Bartel acted within the apparent scope of his authority.

Defendant's motion for judgment of involuntary nonsuit was properly overruled.

Defendant excepted to each of the following three consecutive paragraphs of the court's charge, *viz:*

"Now, where the act of the agent, although it is beyond the actual scope of his authority, is within the apparent scope, and the person dealing with the agent acts in good faith and with reasonable prudence, the principal is bound. The apparent authority, so far as the third person is concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal was clothed as agent, he is under no further obligation to inquire into the agent's actual authority.

"However, the authority must have been actually apparent to the third person, that is, Mr. Azer, who, in order to avail himself of the rights thereunder, must have dealt with the agent, that is, Mr. Bartel, in reliance thereon, in good faith, and in the exercise of reasonable prudence. In which case, the principal, that is, Mr. Melton, or the Westover Hardware, Inc., will be bound by the action of the agent performed in the usual and customary mode of doing business.

"Although Mr. Bartel may have acted in violation of private instructions given to him by Mr. Melton, an agent cannot enlarge the actual authority by his own action, so the question for you to determine by all the facts and circumstances there present, so as to lead Mr. Azer to believe that Mr. Melton had the apparent authority to give this purchase order — that is a question under the law for you to determine."

Obviously, the second reference to "Mr. Melton" in the third quoted paragraph is an error in a transcript or "a mere *lapsus linguae*." It has no relation to the ground of decision.

Absent the testimony as to what transpired between Azer and *Melton,* the instructions given are in substantial accord with our decisions. However, we find nothing in these instructions or elsewhere in the charge that deals directly with a major, if not the crucial factual question, namely, whether Melton told Azer he could leave the cabinets with defendant only on a consignment basis.

Azer was the only person purporting to act for plaintiff in contacts with Bartel and Melton. There was evidence (1) that Azer knew Melton was Bartel's superior, and (2) that Melton notified Azer he could not leave the cabinets with defendant except on a consignment basis. If the jury should so find, such statement by Melton to Azer would negative whatever apparent authority Bartel may have otherwise possessed. "Any apparent authority that might otherwise exist vanishes in the presence of the third person's knowledge, actual or constructive, of what the agent is, and what he is not, empowered to do for his principal." 2 C.J.S., Agency § 92, p. 1189; *Commercial Solvents v. Johnson,* 235 N.C. 237, 242, 69 S.E. 2d 716; 3 Am. Jur. 2d, Agency, § 77. On account of said evidence, defendant was entitled, even in the absence of a request therefor, to an instruction on this substantial feature of the case. *Westmoreland v. Gregory,* 255 N.C. 172, 120 S.E. 2d 523; *Correll v. Gaskins,* 263 N.C. 212, 139 S.E. 2d 202. The failure to so charge was prejudicial error for which a new trial must be awarded.

Other assignments of error present questions that may not arise at the next trial.

New trial.