INVESTMENT PROPERTIES OF ASHEVILLE, INC., AND BAXTER H. TAYLOR v. MARTHA NORBURN MEAD ALLEN

No. 7128SC643

(Filed 12 January 1972)

1. Principal and Agent § 4— proof of agency — conduct of the parties
    The appointment of an agent and the scope of his authority may be established by conduct as well as by words of the principal.

2. Principal and Agent § 4— proof of agency — course of dealing
    Authority may be conferred upon an agent by the course of dealing between the principal and agent.

3. Principal and Agent § 5— apparent authority
    The principal is responsible for acts of an agent within the scope of his apparent authority unless the party dealing with the agent knows he is acting in excess of his actual authority.

4. Principal and Agent § 4— sufficiency of evidence of agency
    Plaintiffs' evidence was sufficient to be submitted to the jury on the question of whether defendant's brother was the agent of defend-

Investment Properties v. Allen

ant in negotiating and then terminating a lease of land owned by defendant and in contracting with regard to the payment of the cost of preparing the land for a motel complex.

**5. Principal and Agent § 5— person clothed with external evidence of agency**

Even if one is not the agent of another, if the other person permits the alleged agent to clothe himself with the external evidence of agency, the principal will be bound to a third person relying on such appearance.

Judge VAUGHN dissents.

APPEAL by defendant from *Martin, Harry C., Judge,* 22 February 1971 Civil Session of BUNCOMBE Superior Court.

Plaintiffs brought this action seeking to recover $19,456.88, the cost of preparing a parcel of land belonging to defendant for a large motel complex. They alleged: From and after 10 May 1965 plaintiffs negotiated with defendant in regard to a long term lease under which plaintiffs would prepare the land and erect a large motel complex thereon. It was agreed through defendant's brother and agent, Dr. Charles S. Norburn, that plaintiffs would prepare the land and defendant would pay for the same. The land preparation was performed and completed by Asheville Contracting Company on or about October 1, 1965; thereafter, demands for payment by Asheville Contracting Company and plaintiffs were refused by defendant whereupon plaintiffs paid Asheville Contracting Company and now defendant is indebted to plaintiffs.

In her answer defendant denied the material allegations of the complaint and further alleged: On or about 6 May 1965 defendant and the corporate plaintiff entered into a written lease agreement whereby the corporate plaintiff leased the subject land for a term of 50 years at an annual rental of $12,000, payable $1,000 per month, rental payments to begin "as soon as the Lessee begins to receive any income from the property or twelve (12) months from this date, whichever is sooner." Under the lease the corporate plaintiff assumed "entire responsibility for the property" and was granted "complete unrestricted control in grading, reshaping and development of the property." The lease further provided as follows: "Lessee covenants and agrees that Lessor may re-enter for default of ten days in any installment of rent or for the breach of any covenant herein contained; and further that should improvements at that time

amount to less than Sixty Thousand dollars ($60,000), Lessee will pay in cash to Lessor, her heirs or assigns the difference between such improvements and that amount." The first monthly rental payment under the lease was due defendant on 1 June 1966. The plaintiffs were acting as partners, co-venturees and joint venturers in the subject matter of said lease and are now indebted to defendant in the sum of $7,000 for rental payments from June through December 1966, and the further sum of $60,000 for breach of the lease relating to improvements. Defendant counterclaimed for $67,000 plus interest and costs.

By reply plaintiffs alleged that the parties agreed that the lease agreement referred to in the answer would be treated as a nullity and the same was rescinded and cancelled in its entirety due to the fact that the provisions in said lease were so poorly drafted and ambiguous that they were incapable of being carried out.

Upon issues submitted the jury found that Dr. Charles Norburn was the agent of defendant in connection with the alleged termination of the lease agreement, that the lease was terminated on or before 1 June 1966; that Dr. Charles Norburn was the agent of defendant in contracting for the land preparation and that plaintiffs should recover from defendant $19,456.88.

From judgment entered on the verdict, defendant appealed.

*Bennett, Kelly & Long by Harold K. Bennett and Hendon & Carson by George Ward Hendon for plaintiffs appellees.*

*Williams, Morris and Golding by James F. Blue III for defendant appellant.*

BRITT, Judge.

Although defendant raises several questions on appeal, the major question presented for our consideration is: Did the trial court err in denying defendant's motion for a directed verdict on the ground that plaintiffs failed to show sufficient evidence for the jury to find that Dr. Charles Norburn was acting as defendant's agent? We answer in the negative and hold that there was sufficient evidence to present a jury question.

[1-3]    The appointment of an agent and the scope of his authority may be established by conduct as well as by words of the principal. Lee's N. C. Law of Agency and Partnership, 3rd Ed.,

Sec. 7, p. 13. The authority of the principal given to the agent may be conferred by the course of dealing between the principal and agent. *Katzenstein v. Railroad Co.*, 84 N.C. 688 (1881). The principal is responsible for acts of the agent within the scope of his "apparent authority" unless the party dealing with the agent knows he is acting in excess of his actual authority. *Research Corporation v. Hardware Co.*, 263 N.C. 718, 140 S.E. 2d 416 (1965).

[4] The evidence in the case at hand portrayed a close business as well as personal relationship between defendant and her brother, Dr. Norburn. Defendant was quite sick during the spring and summer of 1965; she was over 75 and separated from her husband. Defendant stated that her brother had no legal interest in the land involved; that she was aware of a paper writing dated May 10, 1965 (the lease agreement) and that "[t]hey told me it was not a good lease." She was also aware of the negotiations concerning the erection of the motel complex that Dr. Norburn was conducting on her behalf and Dr. Norburn was reporting to her about the negotiations from time to time. Also, Dr. Norburn had the lease prepared that was eventually signed with the corporation that put a motel on the property, and defendant signed the lease stating at the trial that "He (Dr. Norburn) didn't tell me so much, but I knew what was going on."

The evidence further showed: Dr. Norburn was actively seeking to consummate a lease agreement on property in which he had no legal interest between defendant, the owner of the property, and Dr. Logan Robertson of the corporate plaintiff. Dr. Norburn prepared, or had prepared, a lease which was signed by defendant, but said lease was not in sufficient form to acquire financing for the anticipated motel. Further negotiations continued until an impasse was reached and the land was leased to another corporation who erected a motel on the land. During the negotiations, defendant knew of the situation generally if not as to specific details and she trusted her brother "to go ahead and do what he thought best." Dr. Norburn took defendant to see the property several times while it was being graded. Also during this time Dr. Norburn gave a written guaranty stating that he would stand personally liable for the cost of grading the land in the event a lease could not be procured.

[5] Considering all of the evidence in the light most favorable to plaintiffs, we think there was enough to submit the issue of

agency to the jury for their consideration. Even if one is not the agent of another, if the other person permits the alleged agent to clothe himself with the ordinary external evidence of agency the principal will be bound to a third person relying upon such appearance. The principal is estopped from denying the agent's authority. *Jones v. Bank,* 214 N.C. 794, 1 S.E. 2d 135 (1939).

We have carefully considered the other assignments of error brought forward and argued in defendant's brief but conclude that no error, properly assigned, is sufficient to justify a new trial.

No error.

Judge BROCK concurs.

Judge VAUGHN dissents.