OLA BLANTON LUCAS, Widow of LEONARD M. LUCAS, Deceased, Employee v. LI'L GENERAL STORES, A Division of General Host Corporation, Employer; and LIBERTY MUTUAL INSURANCE COMPANY, Carrier

No. 7427IC1043

(Filed 19 March 1975)

**Master and Servant § 49— workmen's compensation — dismissed employee rehired without authority**

Decedent was not an "employee" within the meaning of the Workmen's Compensation Act when he was shot and killed during a robbery while operating the cash register at defendant's store where decedent had been dismissed as an employee at another of defendant's stores for selling beer to a minor, decedent's wife was employed at defendant's store, defendant's district manager told decedent's wife that decedent could work at the store with her but that decedent would have to be paid through the wife's check, the district manager had no authority to allow decedent to work in the store, and both decedent and his wife were aware that the district manager had exceeded his authority in permitting decedent to work in the store. G.S. 97-2(2).

APPEAL by defendants from order of North Carolina Industrial Commission entered 12 October 1974. Heard in the Court of Appeals 19 February 1975.

On 26 April 1973 Leonard M. Lucas was shot during an apparent robbery attempt on the premises of defendant Li'l General Stores on Carolina Avenue in Gastonia. He died the next day. Plaintiff Ola Blanton Lucas, as surviving spouse, filed claim with the Industrial Commission under the North Carolina Workmen's Compensation Act. G.S., Chap. 97. Hearings were held before Deputy Commissioner Ben E. Roney, Jr., on 12 November 1973, and Deputy Commissioner A. E. Leake on 7 February 1974.

Deputy Roney entered the following findings of fact and conclusions of law:

"FINDINGS OF FACT

1. Decedent was dropped from the payroll of defendant employer on February 27, 1973 on account of an allegation that he sold beer to a minor.

2. During the evening of April 26, 1973 decedent was shot during a robbery while he was operating the cash reg-

ister at the Highland Avenue Store. The shooting resulted in death on April 27, 1973.

3. Prior to and following decedent's death Mr. George Shaver managed the Gastonia-Asheville district of Li'l General Stores. There existed five stores in the Gastonia area.

4. Prior to and following decedent's death Li'l General Stores were open seven days a week for 16 hours a day, or 28 eight-hour shifts based upon two-week pay periods.

5. During February 1973 Mrs. Lucas started working for defendant employer. During the pay period beginning February 11, 1973 and ending February 24, 1973 Mrs. Lucas worked ten shifts at the Carolina Avenue Store. During the pay period beginning February 25, 1973 and ending March 10, 1973 Mrs. Lucas worked 13 shifts at the Carolina Avenue Store. During the pay period beginning March 11, 1973 and ending March 24, 1973 Mrs. Lucas worked six shifts at the Highland Avenue Store and one shift at the Carolina Avenue Store. During the pay period beginning March 25, 1973 and ending April 7, 1973 Mrs. Lucas worked two shifts at the Ozark Avenue Store and 15 shifts at the Highland Avenue Store. During the pay period beginning April 8, 1973 and ending April 21, 1973 Mrs. Lucas worked 24 shifts at the Highland Avenue Store.

6. On the evening of April 8, 1973 Mr. Shaver told Mr. and Mrs. Lucas that they were to open the Highland Avenue Store on the morning of April 9, 1973. Mr. Lucas, decedent, was to get paid through Mrs. Lucas; [sic] check because the allegation of selling to a minor prohibited Mr. Lucas from being on the payroll. Mr. Lucas was to work two shifts per day on Thursdays, Fridays, Saturdays and Sundays at two dollars per hour.

7. On the evening of April 8, 1973 Mr. Shaver gave the keys and safe combination to the Highland Avenue Store to the Lucases.

8. On the morning of April 9, 1973 Mr. and Mrs. Lucas opened the Highland Avenue Store. Decedent was on the premises of the Highland Avenue Store frequently thereafter until the fatal shooting which occurred on April 26, 1973. While on the premises decedent shelved stock, op-

erated the cash register and otherwise engaged in activities which involved a direct benefit to defendant employer.

9. Mr. Lucas entered into an oral contract of employment with defendant employer on April 8, 1973 at an average weekly wage of $128.00. The contract of employment terminated on April 27, 1973.

10. Decedent was injured by accident arising out of and in the course of the employment. The injury by accident was the cause of death.

11. Mrs. Lucas is the widow of decedent and is thereby presumed to be decedent's whole dependent.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

The foregoing findings of facts and conclusions of law engender the following additional

### CONCLUSIONS OF LAW

1. Mr. Lucas, decedent, entered into an oral contract of employment with defendant employer on April 8, 1973 at an average weekly wage of $128.00. N.C.G.S. 97-2(2), *Askew v. Leonard Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965).

2. Decedent was injured by accident arising out of and in the course of the employment because the fatal gunshot wound was inflicted during a robbery, said event not occasioned by a force unconnected with the employment, while decedent was actively carrying out the duties of cash register operator. *Robbins v. Bossong Hosiery Mills*, 220 N.C. 246, 17 S.E. 2d 20 (1941) ; *Goodwin v. Bright*, 202 N.C. 481, 163 S.E. 576 (1932) ; *West v. East Coast Fertilizer Co.*, 201 N.C. 556, 160 S.E. 765 (1931) ; *Rosser v. Wagon Wheel*, 19 N.C. App. 507, _____ S.E. 2d _____ (1973).

3. As presumptive whole defendant Mrs. Lucas is entitled to the entire death benefit which amounts to $56.00 per week commencing on April 26, 1973 and continuing for 350 weeks. N.C.G.S. 97-38; N.C.G.S. 97-39."

The Full Commission adopted the opinion and award of Deputy Roney as its own and affirmed the results. Defendants appealed to this Court.

Lucas v. Stores

*Basil L. Whitener and Anne M. Lamm for plaintiff appellee.*

*Mullen, Holland & Harrell, P.A., by James Mullen, for defendant appellants.*

ARNOLD, Judge.

The sole question presented by this appeal is whether there existed an employer-employee relationship between defendant Li'l General Stores and decedent Leonard M. Lucas at the time of the shooting which resulted in Lucas' death. This is a jurisdictional question "to be determined by the rules governing the establishment of contracts, . . . " *Hollowell v. Department of Conservation and Development,* 206 N.C. 206, 208, 173 S.E. 603, 604 (1934). Jurisdictional findings are not conclusive on appeal, but the appellate court may review the evidence and make its own findings as to jurisdiction. *Hicks v. Guilford County,* 267 N.C. 364, 148 S.E. 2d 240 (1966) ; *Askew v. Tire Co.,* 264 N.C. 168, 141 S.E. 2d 280 (1965). The Industrial Commission found and concluded that Mr. Lucas entered into a contract of employment with defendant employer. Having carefully reviewed the evidence, we do not agree.

The term "employee" is defined by G.S. 97-2 (2) as one who is "engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, . . . " Mrs. Lucas testified that when she was assigned to manage the Carolina Avenue Store she discussed with George Shaver, her immediate supervisor and defendant employer's district manager, the possibility of having her husband employed as her assistant. Mr. Lucas had been dismissed for selling beer to a minor at another Li'l General Store. Shaver told Mrs. Lucas, "He can't work over there but four days a week." She asked him, "What about Mr. Pepper and them [Shaver's superiors] ?" to which he replied, "Well, what they don't know won't hurt them." Shaver also stated, "I'll have to run his pay through your check."

Shaver testified that he had no authority to allow Mrs. Lucas to keep her husband in the store with her. Myron E. Jacobson, the divisional manager, testified that Shaver had no authority to put Mr. Lucas back on the payroll.

It is well settled that one who deals with an agent, knowing that his authority is limited, and he is acting beyond its scope, cannot bind the principal. *Texas Co. v. Stone,* 232 N.C. 489, 61

S.E. 2d 348 (1950); *Thompson v. Assurance Society,* 199 N.C. 59, 154 S.E. 21 (1930); *see* Restatement (Second) of Agency § 166 (1958); *cf. Research Corp. v. Hardware Co.,* 263 N.C. 718, 140 S.E. 2d 416 (1965). The evidence clearly shows that both Mr. and Mrs. Lucas were aware of defendant employer's rule, that employees would be dismissed for ABC violations, and that Shaver exceeded his hiring authority by circumventing the rule.

The case of *Michaux v. Bottling Co.,* 205 N.C. 786, 172 S.E. 406 (1934), cited by plaintiff, is distinguishable. In that case, truck drivers hired boys, with the knowledge and consent of the employer, to assist in distribution of the employer's products. When one of the boys fell while attempting to climb in the truck, it was held that he suffered an accident that arose out of and in the course of his employment. In the instant case, there is no showing that defendant employer had any knowledge of the arrangement between Shaver and the Lucases or that Shaver's superiors ratified his unauthorized acts. *See generally* 6 Strong, N. C. Index 2d, Principal and Agent, § 6, pp. 413-14. Thus, Shaver lacked both actual and apparent authority to enter into a contract for hire on behalf of Li'l General Stores with respect to decedent Leonard M. Lucas.

We find therefore that decedent was not an "employee" within the meaning of the Workmen's Compensation Act. There being no employer-employee relationship, the Industrial Commission could not take cognizance of the claim. The order granting plaintiff's claim is reversed.

Reversed.

Judges BRITT and MORRIS concur.