IN THE MATTER OF THE PROPOSED FORECLOSURE OF DEED OF TRUST EXECUTED BY DANNIE McDUFFIE AND WIFE, MARY McDUFFIE, IN AN ORIGINAL AMOUNT OF $21,000 DATED FEBRUARY 17, 1983, RECORDED IN BOOK 3266, PAGE 0798 GUILFORD COUNTY REGISTRY, J. RUFUS FARRIOR, SBUSTITUTE TRUSTEE

No. 9318SC406

(Filed 15 March 1994)

**Mortgages and Deeds of Trust § 104 (NCI4th) — foreclosure sale — higher bid mistakenly entered — purchaser bound by mistake**

The trial court did not err in refusing to relieve the mortgagee of its bid at a foreclosure sale where the trustee mistakenly entered a higher bid than the mortgagee authorized, but the debtors were justified in believing that the mortgagee had conferred upon the trustee the power to bind it to the higher bid; the trustee acted within the scope of his apparent authority as the mortgagee's agent; and the mortgagee was bound on the resulting contract despite the alleged mistaken bid because the mistake was not mutual and was in no way contributed to by the debtors.

**Am Jur 2d, Mortgages §§ 702 et seq., 727 et seq.**

**IN RE PROPOSED FORECLOSURE OF McDUFFIE**

[114 N.C. App. 86 (1994)]

Appeal by Mutual Savings and Loan Association from judgment signed 11 December 1992 in Guilford County Superior Court by Judge Lester P. Martin, Jr. Heard in the Court of Appeals 2 February 1994.

Dannie and Mary R. McDuffie are the record owners of two tracts of real property located in Guilford County. On 8 December 1972, the McDuffies conveyed property located at 1501 Woodbriar Avenue by deed of trust to American Federal Savings and Loan Association (American) to secure a debt owed American, and, on 13 August 1973, the McDuffies conveyed property located at 808 Lowdermilk Street by deed of trust to American to secure a debt owed American. On 17 February 1983, the McDuffies executed a second deed of trust on both the Woodbriar and Lowdermilk properties in favor of American to secure a note in the amount of $21,000. Mutual Savings and Loan Association (Mutual) is the successor corporation to American.

Summit Enterprises, Incorporated (Summit) purchased the Woodbriar property on 18 April 1986 and the Lowdermilk property on 19 April 1986 and assumed the indebtedness secured by the deeds of trust on each property. On 9 February 1990, Summit conveyed the Woodbriar property to Milton H. Hall and his wife, Ruth P. Hall, who paid off the first deed of trust on the property. The only remaining encumbrance on the Woodbriar property was the 1983 deed of trust held by Mutual.

On 2 July 1992, petitioner, J. Rufus Farrior, the substitute trustee of the 1983 deed of trust executed by the McDuffies, filed a petition to commence foreclosure proceedings on the Woodbriar and Lowdermilk properties. On 10 August 1992, the Assistant Clerk of Guilford County Superior Court entered an order authorizing petitioner to give notice of foreclosure and conduct a foreclosure sale of the Woodbriar and Lowdermilk properties. Following a petition by the Halls, on 24 August 1992, Judge C. Preston Cornelius entered an *ex parte* restraining order against petitioner, Summit, and the Clerk of Guilford County Superior Court which prohibited any action in furtherance of the foreclosure on the Woodbriar property. On 11 September 1992, Judge Cornelius entered a consent order which modified the order authorizing the foreclosure of the Woodbriar and Lowdermilk properties by requiring that the Lowdermilk property be sold before the Woodbriar property. Petitioner conducted a foreclosure sale of the Lowdermilk property on 14

September 1992, and placed, on behalf of Mutual, a bid in the amount of $43,361.17 which was the only bid at the foreclosure sale. On 16 September 1992, petitioner filed a motion to withdraw the bid. On 6 October 1992, the Halls filed a motion to compel petitioner to file a preliminary report of sale as required by G.S. § 45-21.26(a). On 8 October 1992, the Assistant Clerk of Guilford County Superior Court entered an order granting the Halls' motion and compelling petitioner to file a preliminary report of sale in the amount of $43,361.17. On 11 December 1992, Judge Martin entered final judgment affirming the assistant clerk's order, denying petitioner's motion to withdraw the bid, and granting the Halls' motion. Mutual appeals.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Reid L. Phillips and Mack Sperling, for appellant Mutual Savings & Loan Association.*

*Tuggle Duggins & Meschan, P.A., by John R. Barlow, II and William R. Sage, for respondents-appellees Milton H. Hall and Ruth P. Hall.*

WELLS, Judge.

Mutual argues that the trial court erred by ordering petitioner to file a report of sale of the Lowdermilk property in the amount of $43,361.17 and denying petitioner's motion to withdraw the bid. Mutual contends that the trial court erred in finding and concluding that the bid made by petitioner was an authorized bid and in denying petitioner's motion to withdraw the bid. We disagree.

In the exercise of equitable jurisdiction, our courts have the power to relieve a purchaser at a foreclosure sale when there is an irregularity in the sale combined with a grossly inadequate or grossly inflated bid. *Glass Co. v. Forbes*, 258 N.C. 426, 128 S.E.2d 875 (1963). Equity can relieve a contracting party of his mistakenly assumed obligation. *In re Foreclosure of Allan & Warmbold Constr. Co.*, 88 N.C. App. 693, 364 S.E.2d 223, *rev. denied*, 322 N.C. 480, 370 S.E.2d 222 (1988).

In deed of trust relationships, the trustee is a disinterested third party acting as the agent of both the debtor and the creditor. *Mills v. Building & Loan Assoc.*, 216 N.C. 664, 6 S.E.2d 549 (1940). When petitioner placed the bid on behalf of Mutual, petitioner was acting as the agent of Mutual. *See Elkes v. Trustee Corp.*,

209 N.C. 832, 184 S.E. 826 (1936) (trustee can bid on property on behalf of the lender, and purchase by lender is valid absent a showing of lack of good faith). When Mutual's bid was accepted as the last and highest, a contract was formed. *In re Foreclosure of Allan & Warmbold Constr. Co., supra.* "The principal is liable upon a contract duly made by his agent with a third person . . . when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority." *Research Corp. v. Hardware Co.*, 263 N.C. 718, 140 S.E.2d 416 (1965). An authorized act means that "the act was such as was incident to the performance of the duties entrusted to the agent . . . even though in opposition to his express and positive orders." *West v. Woolworth Co.*, 215 N.C. 211, 1 S.E.2d 546 (1939). A principal cannot restrict his liability for acts of his agent within the scope of his apparent authority by limitations which persons dealing with the agent have no notice. *Research Corp., supra.* The determination of a principal's liability must be based on what authority the third person, in the exercise of reasonable care, was justified in believing that the principal had conferred upon his agent. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974).

In determining what is equitable, we examine the following facts. Before the 11 September 1992 consent order, Mutual provided petitioner with a bid to be placed on its behalf on the Lowdermilk and Woodbriar properties in an amount sufficient to extinguish the debt secured by the 1983 deed of trust. After the consent order requiring Mutual to proceed first against the Lowdermilk property was entered, petitioner was instructed by Mutual to place a nominal bid on the Lowdermilk property. Petitioner then left for vacation and did not return until the night before the sale. Petitioner requested all beneficiaries on behalf of whom he was making bids to deliver their bids in writing to his office on the morning of the foreclosure sale. On 14 September 1992, the day of the foreclosure sale, Mutual delivered to petitioner's office manager a letter requesting that petitioner enter a bid on behalf of Mutual on the Lowdermilk property in the amount of $1000.00. This letter never came to the attention of petitioner. Consequently, petitioner entered a bid on behalf of Mutual in the amount of $43,361.17. Mutual makes no contention that the foreclosure sale was not in accordance with the law. Although Mutual contends that it will suffer a loss of between $20,000 to $40,000 if it is required to

IN RE PROPOSED FORECLOSURE OF McDUFFIE

[114 N.C. App. 86 (1994)]

purchase the Lowdermilk property for the amount mistakenly bid by petitioner, Mutual calculated this loss based on the value which C. Edmund Fairley, president and city executive for the Greensboro office of Mutual, thought the property would be worth. The property was never formally appraised after 1983, and Mr. Fairley based his valuation on a visual inspection he made from his car. The record fails to disclose that the fair market value of the Lowdermilk property is significantly less than the bid entered by petitioner. Other than petitioner, only the attorneys for the Halls and Summit were present at the foreclosure sale. These individuals were unaware of the limitation sought to be imposed on the power of petitioner by the letter delivered to petitioner's office on the day of the sale.

Under these circumstances, we are of the opinion that the Halls were justified in believing that Mutual had conferred upon petitioner the power to bind it by a bid of $43,361.17 on the Lowdermilk property. Petitioner acted within the scope of his apparent authority, and Mutual is bound on the resulting contract despite the alleged mistaken bid because "ordinarily a mistake, in order to furnish a ground for equitable relief must be mutual; and as a general rule relief will be denied where the party against whom it is sought was ignorant that the party was acting under a mistake and the former's conduct in no way contributed thereto." *Financial Services v. Capitol Funds*, 288 N.C. 122, 217 S.E.2d 551 (1975).

Affirmed.

Judges JOHN and McCRODDEN concur.