NO. COA13-948

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

TERRI DEW BOOKMAN, Administratrix
of the Estate of CARTHINA ROBERSON
DEW,

    Plaintiff,

    v.                        Wilson County
                                 No. 2011 CVS 1575

BRITTHAVEN, INC., D/B/A BRITTHAVEN
OF WILSON, DAVITA RX, LLC, WILSON
MEDICAL CENTER, MORGAN JONES, and
COURTNEY LASSITGER,

    Defendants.


    Appeal by defendant from order entered 10 May 2013 by Judge Milton F. Fitch, Jr. in Wilson County Superior Court. Heard in the Court of Appeals 21 January 2014.

    *Taylor Law Office, by W. Earl Taylor, Jr., for plaintiff-appellee.*

    *Williams Mullen, by Brian C. Vick and Elizabeth D. Scott, for defendant-appellant.*


    HUNTER, Robert C., Judge.


    Defendant Britthaven, Inc. d/b/a Britthaven of Wilson ("Britthaven") appeals from the trial court's order denying its motion to compel arbitration. On appeal, Britthaven argues that apparent authority existed to bind the principal to the

arbitration agreement, and therefore, the trial court erred by ruling that the arbitration agreement is unenforceable.

After careful review, we reverse the trial court's order and remand for further proceedings.

## Background

On 24 August 2010, Carthina Dew ("Mrs. Dew") was admitted into Britthaven after being discharged from Wilson Medical Center following surgery on her broken femur. Mrs. Dew was awake, alert, lucid, and responsive to questions when she arrived at Britthaven. However, she did not sign any of the legal documents needed to admit her into the facility. Her husband, Frederick Dew ("Mr. Dew"), and her daughter, Terri Dew Bookman ("Mrs. Bookman"), signed all relevant documents. They met with Janet Watson ("Ms. Watson"), Britthaven's admission coordinator. Ms. Watson filed an affidavit with the trial court averring that Mr. Dew and Mrs. Bookman presented themselves as having authority to sign all documents needed on Mrs. Dew's behalf prior to her admission into Britthaven. Ms. Watson presented Mr. Dew and Mrs. Bookman with twelve documents, including one titled "RESIDENT AND FACILITY ARBITRATION AGREEMENT – READ CAREFULLY" ("the arbitration agreement"). When it came time to sign the documents, Mr. Dew had Mrs. Bookman

sign his name, "Fred Dew," on the arbitration agreement and all other admission documents. Mrs. Bookman primarily signed Mr. Dew's name on signatory lines intended for either the resident's signature or the signature of the resident's representative or responsible party. For example, on the "Facility Resident Directory Opt Out Instructions," Mrs. Bookman signed "Fred Dew" on the line reserved for the "Signature of Resident or Legal Representative."

Mrs. Dew was discharged from Britthaven on or about 7 September 2010. She died on 3 November 2010, allegedly due to complications with large pressure ulcers. On 28 September 2011, Mrs. Bookman filed a wrongful death action against Britthaven and four other defendants in her capacity as Administratrix of Mrs. Dew's estate ("plaintiff").[1] Britthaven moved to compel arbitration pursuant to the arbitration agreement bearing Mrs. Bookman's signature of Mr. Dew's name. At the hearing on Britthaven's motion, plaintiff challenged the validity of the arbitration agreement by arguing that neither Mrs. Bookman nor Mr. Dew had actual authority to execute the arbitration agreement on Mrs. Dew's behalf. The trial court agreed, entering an order denying Britthaven's motion to compel

---

[1] Britthaven is the only defendant that is a party to this appeal.

arbitration, but did not determine whether Mr. Dew or Mrs. Bookman had apparent authority to sign the arbitration agreement on Mrs. Dew's behalf. That order was appealed to this Court, where the case was remanded by unpublished opinion for findings of fact and conclusions of law relating to the issue of apparent authority. *See Bookman v. Britthaven, Inc.*, No. COA12-663, 2013 WL 1314965 (N.C. Ct. App. April 2, 2013) ("*Bookman I*").[2]

On remand, Britthaven's request to present further evidence on the issue of apparent authority went unanswered by plaintiff's counsel and the trial court. The trial court entered a new order drafted by plaintiff's counsel without conducting an evidentiary hearing or considering any further evidence. It concluded that neither Mr. Dew nor Mrs. Bookman had "legal authority, expressed authority, actual authority,

---

[2] Plaintiff contends that under the doctrine of the law of the case, the *Bookman I* Court determined that "the [trial court's] additional findings fully support the conclusion of law that neither Mr. Dew nor Mrs. Bookman had apparent authority to execute the Arbitration Agreement on behalf of Mrs. Dew and that Defendant-Britthaven's Motion to Compel Arbitration must be denied." However, the *Bookman I* Court explicitly stated that "[n]othing in this opinion is intended to express any view on the merits of the apparent agency issue," and "[w]e do not address plaintiff's arguments regarding the merits of the apparent agency argument because that issue must be considered in the first instance by the trial court." *Bookman I*, at *1, *4. Thus, plaintiff's argument is overruled. *See Goldston v. State*, 199 N.C. App. 618, 624, 683 S.E.2d 237, 242 (2009) ("[T]he law of the case applies only to issues that were decided in the former proceeding.").

implied authority, or apparent authority" to sign the arbitration agreement on Mrs. Dew's behalf, and thus it denied Britthaven's motion to compel arbitration. Britthaven filed timely notice of appeal from the order.

**Discussion**

**I. Apparent Authority**

Britthaven's sole argument on appeal is that the trial court erred by denying its motion to compel arbitration because Mr. Dew and Mrs. Bookman had apparent authority to sign the arbitration agreement on Mrs. Dew's behalf. After careful review, we reverse and remand.

Britthaven's appeal from the trial court's order denying its motion to compel arbitration is interlocutory. Appeals may be taken from interlocutory orders in two circumstances:

> First, the trial court may certify that there is no just reason to delay the appeal after it enters a final judgment as to fewer than all of the claims or parties in an action. N.C.G.S. § 1A-1, Rule 54(b) [2013]. Second, a party may appeal an interlocutory order that "affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment."

*Dep't of Transp. v. Rowe*, 351 N.C. 172, 174-75, 521 S.E.2d 707, 709 (1999) (citation omitted), *cert. denied*, 534 U.S. 1130, 151 L. E. 2d 972 (2002). This Court has previously held that "[t]he

right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable." *U.S. Trust Co., N.A. v. Stanford Grp. Co.*, 199 N.C. App. 287, 289-90, 681 S.E.2d 512, 514 (2009) (citation and quotation marks omitted). Thus, we hold that Britthaven's appeal is properly before us.

"When a party disputes the existence of a valid arbitration agreement, the trial judge must determine whether an agreement to arbitrate exists." *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66, *disc. review denied*, 356 N.C. 167, 568 S.E.2d 611 (2002). "The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." *Ellision v. Alexander*, 207 N.C. App. 401, 404, 700 S.E.2d 102, 106 (2010). "Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate." *Sciolino*, 149 N.C. App. at 645, 562 S.E.2d at 66.

"The law of contracts governs the issue of whether an agreement to arbitrate exists." *Brown v. Centex Homes*, 171 N.C. App. 741, 744, 615 S.E.2d 86, 88 (2005). In order to hold an alleged principal contractually liable to a third party for the acts of his agent, the third party has the burden of proving that

> a particular person was at the time acting as a servant or agent of the [principal]. An agent's authority to bind his principal cannot be shown by the agent's acts or declarations. This can be shown only by proof that the principal authorized the acts to be done or that, after they were done, he ratified them. One who seeks to enforce against an alleged principal a contract made by an alleged agent has the burden of proving the existence of the agency and the authority of the agent to bind the principal by such contract.

*Simmons v. Morton*, 1 N.C. App. 308, 310, 161 S.E.2d 222, 223 (1968) (citations omitted).

Here, the trial court was to determine whether Mr. Dew or Mrs. Bookman had apparent authority to bind Mrs. Dew as their principal to the arbitration agreement.

> Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses. Under the doctrine of apparent authority, a principal's liability in any particular case must be determined by what authority the third person in the exercise of reasonable

care was justified in believing that the principal had, under the circumstances, conferred upon his agent.

*Munn v. Haymount Rehab. & Nursing Ctr.*, 208 N.C. App. 632, 639, 704 S.E.2d 290, 295 (2010) (citation and quotation marks omitted). Furthermore, "the principal cannot restrict his liability for acts of his agent within the scope of his apparent authority by limitations thereon of which the person dealing with the agent has not notice." *Morpul Research Corp. v. Westover Hardware, Inc.*, 263 N.C. 718, 721, 140 S.E.2d 416, 419 (1965).

> The law of apparent authority usually depends upon the unique facts of each case[.] . . . Thus, in a case where the evidence is conflicting, or susceptible to different reasonable inferences, the nature and extent of an agent's authority is a question of fact to be determined by the trier of fact. Where different reasonable and logical inferences may not be drawn from the evidence, the question is one of law for the court.

*Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 595, 324 S.E.2d 889, 893 (1985) (citations omitted).

On remand, the trial court found as fact that:

> 13. Neither Frederick Washington Dew nor Terri Dew Bookman discussed with Carthina Roberson Dew anything with regards to consenting to any arbitration on her behalf on August 24, 2010 or at anytime relevant hereto.

. . .

15. Carthina Roberson Dew did not delegate to Terri Dew Bookman or Frederick Washington Dew the right and/or authority *to agree to any arbitration agreement* on her behalf on August 24, 2010 or at anytime relevant hereto.

. . .

18. Carthina Roberson Dew did not give the authority either expressed or implied to Terri Dew Bookman or Frederick Washington Dew to *execute the Resident and Facility Arbitration Agreement.*

19. Carthina Roberson Dew did not hold Terry Dew Bookman nor Frederick Washington Dew out to Britthaven, Inc., as having or possessing the right and/or authority to *execute or agree to any arbitration agreement* on her behalf on August 24, 2010 or at anytime relevant hereto, nor did she make or indicate any manifestations of such authority to Britthaven, Inc.

. . .

21. At no time during the admission procedure on August 24, 2010 or at anytime relevant hereto did Carthina Roberson Dew hold Terry Dew Bookman or Frederick Washington Dew out as possessing the right to *agree or enter into any arbitration agreement* on her behalf.

22. At no time during the admission procedure on August 24, 2010 or at anytime relevant hereto did Carthina Roberson Dew permit Terry Dew Bookman or Frederick Washington Dew to represent that they possessed the right or authority to agree or

> *enter into any arbitration agreement on her behalf*. (Emphasis added.)

Based on these findings of fact, the trial court concluded that neither Mr. Dew nor Mrs. Bookman had apparent authority to sign the arbitration agreement on Mrs. Dew's behalf and that any belief on Britthaven's part of apparent authority was unreasonable and unjustified under the circumstances. Even assuming that the trial court's findings of fact are supported by competent evidence and are thus binding on appeal, *Ellision*, 207 N.C. App. at 404, 700 S.E.2d at 106, they are insufficient to support the trial court's conclusion that no apparent authority existed to bind Mrs. Dew to the arbitration agreement.

Significantly, the trial court made no factual findings as to whether Mrs. Dew conferred authority on Mrs. Bookman or Mr. Dew to conduct the admission process in general on her behalf. Thus, its analysis as to the arbitration agreement is incomplete. Ms. Watson averred that both Mr. Dew and Mrs. Bookman "presented themselves as having full authority to act on behalf of Mrs. Dew, and to sign and execute any and all necessary documents on her behalf." Indeed, not only does plaintiff not challenge the enforceability of any of the eleven other contracts signed by Mrs. Bookman and Mr. Dew on Mrs. Dew's behalf, Mrs. Bookman averred that she signed documents in Mr.

Dew's name so that Mrs. Dew could be "admitted" into Britthaven. The complaint itself states that Mrs. Dew was "admitted" into Britthaven, and the trial court found as fact that "[Mrs. Dew] was admitted as a resident" of Britthaven. Ms. Watson averred that the paperwork signed by Mrs. Bookman and Mr. Dew is "necessary" for a resident to be admitted into Britthaven. Therefore, the trial court's finding of fact that Mrs. Dew was "admitted" and plaintiff's own concession that Mrs. Dew was "admitted" tends to show that at the very least, there may have been actual or apparent authority conferred on Mr. Dew or Mrs. Bookman to execute some or all of the contracts that were needed in order to complete the admission process.

If such authority did exist, the issue regarding the apparent authority to enter into the arbitration agreement would become one of scope. The North Carolina Supreme Court has established that "[t]he principal is liable upon a contract duly made by his agent with a third person . . . when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority." *Morpul Research Corp.*, 263 N.C. at 721, 140 S.E.2d at 418. Throughout the admission process, Mrs. Bookman and Mr. Dew signed twelve contracts with Britthaven on Mrs. Dew's

behalf. Of those twelve contracts, they now challenge the enforceability of only one – the arbitration agreement. Mrs. Bookman signed Mr. Dew's name on signatory lines reserved for Mrs. Dew or her "Legal Representative," "Responsible Party," and "Agent or Representative." Ms. Watson averred that neither Mr. Dew nor Mrs. Bookman "raised any objection to agreeing to or signing any of the documents that I presented them" and that "[a]t no time during the admission process, did Mr. Dew or his daughter make any statement or take any action to suggest that their authority to act on behalf of Mrs. Dew was limited in any way or that either lacked the authority to sign any of the paperwork on her behalf." Given that Mrs. Bookman and Mr. Dew may have had authority to conduct the admission process for Mrs. Dew, and Ms. Watson averred that she was unaware of any limitation on this authority if it existed, there remains evidence which the trial court failed to address in its findings of fact and conclusions of law "that would allow, but not require, a finding of apparent authority" to enter into the arbitration agreement. *Bookman I*, at *4.

Rather than allowing Britthaven, the party bearing the burden of proof, to put on further evidence as to these matters after remand from *Bookman I*, the trial court entered new

findings of fact taken verbatim from plaintiff's proposed order. Such findings are only supported by affidavits from Mrs. Bookman and Mr. Dew that were initially presented to the trial court in support of plaintiff's argument that there was no *actual* authority to bind Mrs. Dew to the arbitration agreement. Plaintiff presented no evidence for the purpose of resolving the issue of apparent authority. Thus, because the trial court denied Britthaven the opportunity to carry its burden of establishing apparent authority and failed to address all issues raised by the evidence it had before it, we conclude that it did not fully comply with the *Bookman I* Court's mandate to enter "further findings of fact and conclusions of law regarding whether either Mr. Dew or [Mrs.] Bookman had apparent authority to enter into the arbitration agreement in this case." *Bookman I*, at *4; *see Small v. Small*, 107 N.C. App. 474, 477, 420 S.E.2d 678, 681 (1992) ("In a trial without a jury, it is the duty of the trial judge to resolve all issues raised by the pleadings and the evidence by making findings of fact and drawing therefrom conclusions of law upon which to base a final order or judgment.").

Because the trial court failed to enter findings of fact or conclusions of law resolving: (1) whether Mr. Dew or Mrs.

Bookman had authority to bind Mrs. Dew to the other admission contracts; (2) whether the arbitration agreement fit into the scope of this potential authority; (3) whether there was any limitation on this potential authority; and (4) whether Britthaven was aware of any limitation on this authority if one existed, we must reverse the trial court's order and remand. We further instruct the trial court to conduct an evidentiary hearing as needed to resolve these outstanding issues.

## Conclusion

For the reasons stated above, we reverse the trial court's order denying Britthaven's motion to compel arbitration and remand for further proceedings.

REVERSED AND REMANDED.

Judges MCGEE and ELMORE concur.