IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-285

Filed: 17 November 2020

Buncombe County, No. 19 CVS 365

CHARLES J. SHORT, Plaintiff

v.

CIRCUS TRIX HOLDINGS, LLC; SKY ZONE LLC; SKY ZONE FRANCHISE GROUP, LLC; SKYZONE ASHEVILLE, LLC d/b/a SKYZONE TRAMPOLINE PARK; AND JOHN DOES 1-3, Defendants

Appeal by Defendants from an Order entered 13 September 2019 by Judge Marvin P. Pope in Buncombe County Superior Court. Heard in the Court of Appeals 20 October 2020.

*Davis Law Group, P.A., by Brian F. Davis, for plaintiff-appellee.*

*Cranfill Sumner & Hartzog, LLP, by John W. Ong, Meredith F. Hamilton, and Steven A. Bader, for defendants-appellants.*

HAMPSON, Judge.

## Factual and Procedural Background

Circus Trix Holdings, LLC, Sky Zone, LLC, Sky Zone Franchise Group, LLC, and Sky Zone Asheville, LLC d/b/a Sky Zone Trampoline Park (collectively, Defendants) appeal from the trial court's 13 September 2019 Order denying Defendants' Motion to Compel Arbitration where the trial court ruled there was no

valid agreement to arbitrate between the parties. The Record before us tends to show the following:

On 4 April 2019, Charles J. Short (Plaintiff) filed a First Amended Complaint[1] (Complaint) asserting Defendants violated North Carolina's Device Safety Act and were negligent in connection with injuries Plaintiff sustained while visiting Defendants' trampoline park in Asheville, North Carolina. Plaintiff alleged on or about 27 January 2018, Plaintiff and his wife decided to celebrate their daughter's birthday at Sky Zone Asheville trampoline park. On or about that same date, Plaintiff's wife visited Sky Zone Asheville's website to book the party. As part of the online booking process, Plaintiff's wife filled out and signed liability waivers for Plaintiff and the couple's three children. Plaintiff further alleged, at no time prior to the incident in question, did Plaintiff know about his wife's signing a waiver, nor did he authorize her to do so. The Complaint further alleged, upon arrival at Sky Zone Asheville, Plaintiff and his group were "checked in" by a manager, then the group removed and stowed their shoes.

Plaintiff asserted he then began to "look around the facility to see what other activities were offered" before making his way to the "free climb" wall. Plaintiff claimed he asked the attendant for direction on "what to do" and the attendant responded "just climb the wall and jump into the foam pit. Keep your feet apart when

[1] Plaintiff filed an earlier Complaint on 25 January 2019 alleging Defendants' negligence and "wanton conduct" caused Plaintiff's injuries.

you jump." Plaintiff then climbed the wall and, before jumping off, asked the attendant: "And I can just jump off?" The attendant responded, "jump away from the wall, land feet first. Go ahead and jump." Plaintiff claimed he did as the attendant instructed, and when he entered the pit and his feet impacted the floor, he fractured both his right and left tibias.

On 16 July 2019, Defendants filed their Motions to Dismiss and Answer to Plaintiff's First Amended Complaint (Answer). In their Answer, Defendants alleged "Plaintiff signed a Participant Agreement, Release and Assumption of Risk with Sky Zone . . . contain[ing] an arbitration provision which is specifically highlighted by requesting that the signor place an 'X' acknowledging that he/she read the clause." Defendants also argued the trial court lacked subject-matter jurisdiction based on the signed agreement containing the arbitration clause. Defendants admitted all customers are required to read and sign a "Participation Agreement, Release and Assumption of Risk" (Agreement) online or at the facility prior to being allowed to use Sky Zone Asheville's facilities and equipment. Defendants also admitted an Agreement "was signed by or for Plaintiff[.]" Defendants further raised a number of affirmative defenses including: Release and Waiver; Arbitration, as set forth in the Agreement; and Contractual Limitations.

Also on 16 July 2019, Defendants filed a Motion to Compel Arbitration and Stay Proceedings (Arbitration Motion). Defendants attached an Affidavit of Sky Zone

(Defendants' Affidavit)—completed by Sky Zone Asheville General Manager Travis Wilson Fowler—and a copy of the Agreement purportedly signed by Plaintiff. Defendants alleged Plaintiff "electronically signed the agreement for himself" and "entered into the Agreement in consideration of Plaintiff being allowed to use the Sky Zone Asheville facilities and equipment . . . ." The Agreement's arbitration clause states:

> I understand that by agreeing to arbitrate any dispute . . . I am waiving my right, and the right(s) of the minor child(ren) above, to maintain a lawsuit against [Defendants] . . . for any and all claims covered by this Agreement. By agreeing to arbitrate, I understand that I will NOT have the right to have my claim determined by a jury . . . .

In Defendants' Affidavit, Travis Fowler stated he became the general manager in January 2018 and was the general manager at the time Plaintiff was injured. Fowler then explained Sky Zone Asheville's policies and procedures regarding Participation Agreements and customers using Sky Zone Asheville's facilities. Fowler stated all participants must sign an Agreement before entering and using the facilities. In addition, "all participants had to check in and be provided with a temporary sticker" in order to confirm they "had signed and acknowledged the Agreement." According to Fowler, temporary stickers were not "provided to those individuals who had not executed the Agreement, either online or in person."

Fowler stated Sky Zone Asheville's "online system for the execution of the Agreement" recorded information about the participant and this information "was

then used when the participant arrived in order to confirm their execution of the agreement." Fowler also asserted, on the day of Plaintiff's injury, Plaintiff would have been asked if [he] had completed the Agreement online." Those who had not completed the agreement online would have been directed to a "Waiver Station Kiosk" where they would complete the Agreement and receive a receipt. A participant would then take this receipt to the check-in counter where the participant would buy a ticket and receive a temporary sticker. Participants who advise they completed the Agreement online are directed to the check-in counter where a Sky Zone Asheville employee checks the online system to confirm completed Agreements before participants buy a ticket and receive a sticker. Moreover, Fowler stated in January 2018, there were Guest Responsibility signs placed throughout the facility advising participants they were required to execute the Agreement and of other warnings.

On 28 August 2019, Plaintiff filed a Response to Defendants' Motion to Compel Arbitration and Stay Proceedings (Response). In this Response, Plaintiff asserted he did not sign the Agreement; Plaintiff's wife signed the Agreement for him without Plaintiff's "permission or authorization;" at no time "before, during, or after his arrival at Sky Zone Asheville did Plaintiff expressly or impliedly enter into any agreements with Sky Zone Asheville;" and there "was never a mutual agreement, or meeting of the minds, between the parties." Plaintiff submitted affidavits from himself and his wife with this Response.

In his affidavit, Plaintiff asserted he went to Sky Zone Asheville on 27 January 2018, to celebrate, as part of a group totaling approximately twenty-six people, his daughter's birthday. According to Plaintiff, as the group entered Sky Zone Asheville, "a male employee approached [the group] and inquired if we had signed up and purchased tickets online." Plaintiff's wife, and some of the other adults, replied they had signed up online and the employee took them to a counter to "complete the check-in process." Another employee approached Plaintiff, some of the remaining adults, and the fourteen children and led them to an area where the group could remove and stow their socks and shoes. Then, Plaintiff's wife approached from the check-in counter and handed Plaintiff socks for use in the facility. Plaintiff's affidavit then recounted the events alleged in the Complaint leading up to and including his injury.

The remainder of Plaintiff's affidavit states "at no time prior to the incident in this case," did any Sky Zone Asheville employee ask Plaintiff if he had signed an online agreement or waiver or direct Plaintiff to a "Waiver Station Kiosk." Plaintiff further asserted at no time prior to the incident did he notice the "Waiver Station Kiosk" or "anything inside Sky Zone Asheville . . . that alerted [Plaintiff] to the need and/or requirement for signing any agreement and/or waiver." Plaintiff asserted he did not know, nor did he "have reason to know," his wife had completed an online agreement waiving any of his legal rights, and he did not authorize his wife, expressly

or impliedly, to do so. Moreover, according to Plaintiff, his wife did not seek his permission to sign any agreement or waiver.

For her part, Plaintiff's wife, Deanna Short, stated in her affidavit she "went online to Sky Zone's website and filled out the required paperwork" for Plaintiff and their children. Plaintiff's wife stated she did not ask Plaintiff's permission to do so, nor did she tell or notify Plaintiff she had signed the Agreement for Plaintiff. According to Plaintiff's wife, when the group entered Sky Zone Asheville, an employee "approached us and inquired if we had signed up and purchased tickets on-line." Plaintiff's wife said she had, as did some of the other adults, and the employee took her to the check-in counter. Plaintiff's wife asserted the employee asked her if she had completed the paperwork online and she said she had, but did not recall "being given any tickets and/or any temporary stickers by the Sky Zone employee . . . ." Plaintiff's wife further asserted the employee did not ask if Plaintiff had signed the Agreement, nor did the employee ask her to "go get [Plaintiff] . . . so that he could confirm that he had electronically signed the agreement and/or waiver[.]" Plaintiff's wife then recounted handing Plaintiff socks for the group and being alerted to Plaintiff's injury.

The trial court heard Defendants' Motion at a 3 September 2019 hearing. Almost immediately after the hearing began, the trial court stated, "what it boils down to, correct me if I'm wrong, it boils down to whether or not Mr. Short signed the

arbitration." The trial court continued: "If [Plaintiff] signed it, okay, he's subject to arbitration. If he didn't sign it, he's not subject to arbitration." The trial court then asked if Defendants had any evidence showing Plaintiff, in fact, signed the Agreement and counsel replied they did not. However, Defendants' counsel stated the affidavits showed Plaintiff's wife did sign the Agreement for Plaintiff as—Defendants claimed—his agent. Defendants' counsel asserted Plaintiff "knew, according to his affidavit, that [Plaintiff's wife] responded in the affirmative that she had signed up and purchased tickets online. He was also aware that she went to complete the check-in process while he was there." Counsel further stated Plaintiff was only allowed entry after Plaintiff's wife completed the check-in process and that there were signs posted alerting participants "must have completed and signed the agreement." Defendants' counsel continued to reiterate Plaintiff's wife completed the check-in process, with Plaintiff's knowledge, and Plaintiffs wife told Sky Zone Asheville employees she had "completed the paperwork online[.]"

Plaintiff's counsel responded saying, based on the affidavits, Plaintiff did not enter into any agreement with Defendants and that Plaintiff hearing his wife "sign[ed] up and [bought] tickets online" was not sufficient to alert Plaintiff she had signed the Agreement for him. Counsel further asserted: "at no time did [Plaintiff], either through implication or an express agreement or apparent agency situation, . . . ever say you have my permission to sign an agreement for me." Both Plaintiff's and

Defendants' counsel continued to argue whether the affidavits showed there was an agreement, whether Plaintiff was aware of the requirement to sign a waiver or agreement, and whether Plaintiff's wife acted as his agent—to include signing the Agreement.

At the close of oral arguments, the trial court denied Defendants' Motion. Defendants' counsel asked the court to include "factual findings in the denial;" the trial court agreed, and Plaintiff's counsel stated he would draft the Order and findings. The trial court told Plaintiff's counsel to "do findings of fact as to what transpired with everything."

On 13 September 2019, the trial court issued an Order denying Defendants' Motions to Dismiss and Compel Arbitration. The Order contained Findings of Fact including: Plaintiff's wife completed the online check-in process and paperwork on Sky Zones Asheville's website; Plaintiff's wife "checked" the clause in the Agreement titled "Arbitration of Disputes;" Plaintiff's wife typed Plaintiff's name into the end of the Agreement form; and Plaintiff did not know his wife completed the Agreement form by entering Plaintiff's name and information. The trial court accepted the sequence of events beginning with Plaintiff and his family arriving at Sky Zone Asheville and ending with the completion of the check-in process as stated in Plaintiff's and his wife's affidavits. The trial court also found Plaintiff did not see the

signs alerting participants of the need to sign waivers as referenced in Defendants' affidavit.

Based on the affidavits and oral arguments, the trial court concluded there was "no mutual agreement and no meeting of the minds between Plaintiff . . . and Defendants[,]" necessary for a valid agreement to arbitrate under North Carolina law. The trial court further concluded: "Because Plaintiff . . . had not read the Agreement, Sky Zone's attempt to bind him to the arbitration clause is not sufficient to prove the necessary mutual agreement between the parties." Accordingly, the trial court held the Agreement's arbitration clause was "unenforceable against" Plaintiff.

On 11 October 2019, Defendants timely filed a written Notice of Appeal from the trial court's 13 September Order denying Defendants' Motion to Compel Arbitration.

## Issue

The dispositive issue on appeal is whether the trial court's Findings of Fact adequately resolve the factual disputes between the parties as to the existence of a valid arbitration clause to support its denial of Defendants' Motion to Compel Arbitration.

## Analysis

Defendants' appeal of the trial court's Order is interlocutory. "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston*

*v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, "immediate appeal is available from an interlocutory order or judgment which affects a substantial right." *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (quotation marks omitted). "[T]he right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable." *U.S. Trust Co., N.A. v. Stanford Grp. Co.*, 199 N.C. App. 287, 289-90, 681 S.E.2d 512, 514 (2009) (citation and quotation marks omitted). Accordingly, Defendants' appeal is properly before us.

"When a party disputes the existence of a valid arbitration agreement, the trial judge must determine whether an agreement to arbitrate exists." *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002). When reviewing the denial of a motion to compel arbitration, findings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if there is evidence to the contrary. *Bookman v. Britthaven, Inc.*, 233 N.C. App. 454, 457, 756 S.E.2d 890, 893 (2014). "Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate." *Id.* (citation and quotation marks omitted). Moreover, when deciding pretrial motions, "[i]f the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency

of the evidence presented in the affidavits much as a juror." *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694,611 S.E.2d 179, 183 (2005).

In this case, the parties dispute the existence of a valid arbitration agreement. Plaintiff contends he never signed the Agreement himself and he did not know his wife signed the Agreement, nor did he authorize her to do so. At the hearing, Defendants argued Plaintiff's wife signed the Agreement as Plaintiff's agent and Defendant Sky Zone Asheville relied on that authority. Defendants' counsel admitted there was not evidence Plaintiff signed the Agreement himself, but there was evidence Plaintiff was aware his wife signed Plaintiff up online. Defendants' counsel also argued there was evidence Plaintiff was, or should have been, aware the sign up and check-in process included waivers as there were signs posted in the facility alerting customers of this requirement. Plaintiff's affidavit asserts he did not recall seeing such signs.

Based on these arguments and the affidavits in the Record, the trial court found: (1) Plaintiff's wife signed the Agreement for him, without Plaintiff's knowledge; (2) Plaintiff did not sign the Agreement; and (3) Plaintiff was not aware of the need to sign the Agreement. The trial court then concluded as a matter of law: (1) because Plaintiff did not sign the Agreement, there was no "mutual agreement and no meeting of the minds" between Plaintiff and Defendants; (2) because Plaintiff had not read the Agreement, there was no mutual agreement to which Defendants

could bind Plaintiff; and therefore (3) the Agreement's arbitration clause was unenforceable against Plaintiff.

However, "[t]he law of contracts governs the issue of whether an agreement to arbitrate exists." *Brown v. Centex Homes*, 171 N.C. App. 741, 744, 615 S.E.2d 86, 88 (2005). An agent may contractually bind a principal to a third party if the third party can establish an agency relationship between the principal and agent. *Bookman*, 233 N.C. App. at 457-58, 756 S.E.2d at 893-94. "An agent's authority to bind [a] principal . . . can be shown only by proof that the principal authorized the acts to be done or that, after they were done, [the principal] ratified them." *Id.* "Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent [the agent] possesses[,]" and the principal's liability "must be determined by what authority the third person in the exercise of reasonable care was justified in believing" the principal conferred to the agent. *Id.* at 458, 756 S.E.2d at 894.

At the motion hearing, Defendants argued, generally, such an agency relationship existed between Plaintiff and his wife, and Defendants relied on Plaintiff's manifestations holding his wife out as his agent. For its part, the trial court made no findings of fact as to whether an agency relationship existed between Plaintiff and his wife on any of the above agency theories. The trial court's findings only addressed the uncontested fact Plaintiff did not sign the Agreement. The trial

court did not address the central factual disputes as to whether an agency relationship between Plaintiff and his wife existed such that Plaintiff's wife could bind him to the Agreement. The trial court accepted the affidavits as true without weighing the parties' incompatible narratives on what those affidavits proved as to agency.

On appeal, Plaintiff argues no such agency relationship existed and we should presume the trial court found there was no agency relationship. Defendants argue Plaintiff's wife had actual and/or apparent authority to bind Plaintiff to the Agreement, or in the alternative, the trial court made no such findings which we can review. The Record—through affidavits and oral arguments—reflects a number of factual disputes regarding agency. Because the trial court did not decide the key factual issue of agency, we cannot, in turn, decide the issue as a matter of law. *See Parker v. Town of Erwin*, 243 N.C. App. 84, 99, 776 S.E.2d 710, 722 (2015) ("the trial judge had the responsibility of acting as a fact-finder . . . and was responsible for determining the weight and sufficiency of the evidence" (citations and quotation marks omitted)). Accordingly, we vacate the trial court's Order and remand to the trial court for appropriate findings of fact to resolve the parties' factual disputes regarding agency and to support its conclusion as to whether the parties mutually agreed to arbitration. *See Bookman*, 233 N.C. App. at 461, 756 S.E.2d at 896

(reversing and remanding a trial court's denial of a motion to compel arbitration because the trial court made no findings of fact concerning apparent authority).

## **Conclusion**

Accordingly, for the foregoing reasons, we vacate the trial court's Order and remand this matter to the trial court for additional proceedings on the question of agency.

VACATED AND REMANDED.

Judges BRYANT and DIETZ concur.